TERRENCE McGEE v. THE CONSOLIDATED STREET RAILWAY COMPANY.

*Electric street railways—Negligence—Failure to have headlight— Injury to pedestrian—Contributory negligence.*

1. Where the ordinance under which an electric street railway is operated only requires that the cars "after sunset shall be provided with colored signal lights in front and rear," the failure to have also a headlight or light attached to the dashboard of the car is not negligence *per se.*[1]

2. The rule that one must look and listen before crossing the tracks of a steam railway is equally applicable to an electric street railway.

3. Defendant operates an electric street railway in the city of Grand Rapids, and by ordinance is permitted to run its cars at a rate of speed not exceeding 15 miles per hour. Plaintiff, while attempting to cross defendant's double tracks on South Division street, in the dusk of a dark and wet November evening, was struck by a south-bound car which was running from 7 to 15 miles per hour, and injured. The car carried five electric lights inside, and the colored signal lights in front and rear required by the city ordinance. Plaintiff, after leaving the street curb, walked a distance of about 14 feet before reaching the track, and he testified that during this time he had his eyes upon a car coming from the south, and did not expect a car from the north, which he could have seen had he looked in that direction. Plaintiff had lived in the vicinity

[1] With this case as reported in 26 L. R. A. 300, there is a note on "Necessity of Headlights on Street Cars."

102 107
103  53

102 107
105 465

102 .107
109  86

102 107
112 372
112 376

102 107
f118 210
118 211
119 586

102 107
120 402

102 107
121 583
d121 584

102 107
123 695

102 107
128 374

102 107
s60NW 293
s47A8R 507
j131 ³623

102 107
134 200

102 107
135 ² 86

102 107
j145 ³ 16

102 107
j147 ³215

of the accident for many years, and knew of the constant passage in both directions of defendant's cars. And it is held that plaintiff was bound to know that the crossing was a place of danger; that he was bound to look both ways before getting upon the track; that it will not do to say that he acted prudently and carefully in looking before getting off the curb, and was therefore not bound to look again because he saw no car coming from the north at that time; and that a verdict should have been directed for the defendant.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued June 20, 1894. Decided September 25, 1894.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Kingsley v. Kleinhans,* for appellant.

*McGarry, McKnight & Judkins,* for plaintiff.

Long, J. Plaintiff brought suit to recover damages for the loss of a foot, claiming it was occasioned by the negligent act of the defendant street-railway company in running one of its electric cars over him. The accident occurred at the intersection of South Division street and Fifth avenue, in the city of Grand Rapids, while plaintiff was attempting to cross the company's tracks, in the dusk of a dark and wet evening, on November 26, 1892. The defendant has parallel double tracks on South Division street, which is flat and level where it crosses Fifth avenue at right angles. The company runs its southbound trains over South Division street on the west track, while its north-bound trains use the east track. Plaintiff claims that about half past 5 o'clock on that evening, while he was crossing South Division street from the west along the north crosswalk on Fifth avenue, and at the west rail of the west track, he was run against by a motor car without a headlight, then going south at a high rate of speed, without sounding a gong or giving any note of

warning, and that the wheel of the car passed over his right ankle, necessitating amputation. The company claims that at the time of the accident it was only early twilight; that it was then operating its motor car with care; that the time for putting on a headlight, according to the custom of the company, had not yet arrived, but that the car was brilliantly illuminated on the inside by many electric lights, and that the gong was sounded at the crossing as usual. The defendant also claims that the plaintiff was wholly at fault in heedlessly walking in front of the visible and illuminated car; and that the motorman, although he saw the plaintiff, had no notice of his intention to pass within the lines of danger until he was so near the tracks that it was too late to stop the car before the accident occurred; that the car, however, was stopped in the shortest time and space possible after the first appearance of danger, and, although the rails were wet and slippery, still it came to a halt before the second wheel could pass over the plaintiff's leg.

The city ordinance requires that—

"The cars of said railway, after sunset, shall be provided with colored signal lights in front and in the rear."

It cannot be said that it was negligence *per se* not to have a headlight or light attached to the dashboard of the car, as the ordinance itself provides what kind of lights shall be carried,—that is, "colored signal lights in front and in the rear,"—and the testimony is uncontradicted that such lights were carried.

Plaintiff cites *Rascher v. Railway Co.*, 90 Mich. 413, on the proposition that it was negligence not to have a headlight. That case does not support that proposition. There the plaintiff was driving along a street-car track, after dark, towards a coming car, which was running at the rate of from 15 to 20 miles an hour, and which came

suddenly upon her. The car was not lighted inside or out. It was said by this Court that—

"It ought to be lighted in the night-time, so that its approach can be seen by other travelers; and between twilight and dark, if not lighted, it ought to be run so slowly as to avoid collision, or else give by some signal warning of its approach."

The car in the present case was running from 7 to 15 miles per hour, and under the ordinance it was permitted to run 15 miles per hour. The testimony is quite contradictory on the question whether the gong was sounded. The defendant contends that all the requirements of the city ordinance were complied with, not only in regard to lights, but also in the sounding of the warning signals, and the testimony tends strongly to show that these warnings were given.

The most important question in the case, however, relates to the care which the plaintiff exercised in attempting to make the crossing in front of the car. The plaintiff testified that when he neared the curb, and before stepping down into the street, he looked north and south along Division street; that he saw a car coming from the south, and it had a headlight; that it was then a block or a half a block away. He then testified as follows:

"Q. Now, what was the fact as to whether you looked north or not to see if there was any car in that direction?

"A. I did. I thought I was safe enough to cross. I didn't expect a car coming from the north.

"Q. Did you look to see whether there was any, or not?

"A. Yes, sir.

"Q. Did you see any?

"A. No, sir; I didn't observe any."

On cross-examination, he testified as follows:

"Q. Which way did you look first, to the north or south?

"*A.* Well, I was making my way home, of course, and I saw this car coming from the south with a headlight on.

"*Q.* Did you look at that first? Did you look at the car coming from the south, first?

"*A.* Yes, sir; because I saw that car visibly, you know.

"*Q.* Did you notice it the other way?

"*A.* I did look the other way, and, of course, I didn't notice anything, because, if I had, I would not be caught.

"*Q.* Where were you when you looked to the north?

"*A.* When I looked to the north?

"*Q.* Yes, sir.

"*A.* It was just when I was starting across.

"*Q.* Before you left Division street?

"*A.* Yes, sir; when I looked up.

"*Q.* Just as you were going to leave Division street, you looked to the north, and didn't see anything?

"*A.* Yes, sir.

"*Q.* Before that you had looked to the south?

"*A.* Yes, sir.

"*Q.* Did you continue straight across up to the time of the accident?

"*A.* Yes, sir.

"*Q.* Without looking either way?

"*A.* I know I thought there was no danger of this car coming from the south. It was far enough off so that I had time enough to cross.

"*Q.* Were the electric lights lighted at this time?

"*A.* Not that I know of.

"*Q.* You think not?

"*A.* I don't think they were.

"*Q.* When you left Division street, did you have to step down?

"*A.* After I left Division street?

"*Q.* When you stepped off of Division street, did you step down into the roadway?

"*A.* Yes, sir. I stepped off of the sidewalk, you know.

"*Q.* Was it before you took this step that you looked north and south?

"*A.* Yes, sir.

"*Q.* After you took that step, just describe what you did.

"*A.* Well, I had my eye upon the car coming from the south, and I was not paying much attention to the north, because I didn't expect any car coming from the north, really.

"*Q.* You walked straight that way, and kept your eye on the car from the south?

"*A.* Yes, sir. It was far enough so that I had plenty of time to cross.

"*Q.* Up to the time you were hit?

"*A.* Yes, sir."

Redirect examination:

"*Q.* About how far is this west track of the railroad company from the sidewalk?

"*A.* The west track?

"*Q.* The west track of the railroad company. You say you looked to the south and north as you started to go across. How far were you from that track? How many steps would you have to take to strike the track?

"*A.* Oh, it must probably be 12 or 15 feet.

"*Q.* As you started to go across, as you were walking, did you look both ways?

"*A.* Yes, sir; I did, sir."

It is therefore made certain by the plaintiff's own testimony that after he left the curb, some 15 feet away (by actual measurement 13 feet 10 inches), he did not look to the north. During that time he had his eyes upon the car coming from the south, and he says he did not expect a car from the north. This seems to account for his not having seen the car by which he was struck. Others saw it, and testified that it was lighted inside, and carried the lights required by the ordinance. If he had looked to the north before stepping upon the first rail, he could have seen this car. It was then almost upon him. The motorman saw him when some distance away, but supposed that he would stop.

While pedestrians have the right to be upon and travel along the public highway, yet they are bound to take notice of the dangers incident to the public travel thereon, and especially is this so where street cars are constantly passing and repassing, driven with electricity. The city authorities recognized the necessity of rapid transit, and

limited the cars upon that street to 15 miles per hour. These cars are heavy, laden with motors, and they cannot at once be stopped. They have no right to run down pedestrians, but those in charge have a right to suppose that pedestrians will not walk onto the track without looking to see if a car is coming. It is well known that these crossings are places of danger, and that cars do not. stop at every crossing. Here the custom was to stop on the opposite crossing from where the plaintiff was. Plaintiff had lived in that vicinity for many years, and knew of the constant going and coming of these cars, and he was bound to know that the crossing was a place of danger. He was bound to look both ways before getting on the track. It will not do to say that he acted prudently and carefully in looking before getting off the curb, and was therefore not bound to look again because he saw no car coming from the north at that time. A car running 15 miles an hour would pass a great distance while a pedestrian was going 13 feet 10 inches. The plaintiff was bound to look before stepping upon the place of danger.

In *Gardner v. Railroad Co.*, 97 Mich. 240, it was held that a traveler was guilty of negligence in not looking in the proper direction for an approaching train, by which he was injured. It appeared in that case that when within 5 feet of the track, if he had looked, his view would have been unobstructed for 250 feet in the direction from which the train approached.

In *Haight v. Railroad Co.*, 7 Lans. 11, a woman on foot approached the defendant's tracks on Bridge street, in the village of Amsterdam. This street crossed three tracks at right angles. Her attention was fixed upon a train passing over the third track. She passed over the first track in the rear of some freight cars. Here she looked up the second track, but, on account of the freight

cars, could not see very far. Then, in passing over the seven feet between the first and second tracks she looked at the rear end of the train which had just passed over the third track, but did not look along the second track after she left the rails of the first, and, reaching the second, she was struck by a train on that track. It appeared that in the seven feet between the first and second tracks she could have seen the approaching train for several hundred feet. She did not once look down that track, but kept her eyes upon the train upon the third track. This was held to be contributory negligence as matter of law. The supreme court said:

"It is therefore quite plain that, if the plaintiff had looked in the right direction as she was about leaving the first track, she must have seen the approaching train. There was no obstruction in the way, and that she did not see or hear the train which was coming when she stepped on the track was owing to the fact that she did not look for it in the direction from whence it came. * * * She neglected to look in the right direction."

This case was cited with approval by the court of appeals in *Salter v. Railroad Co.*, 75 N. Y. 279.

It is said by counsel for plaintiff that, while this may be the rule in regard to steam railways, it cannot be applied to street railways. In *Carson v. Railway Co.*, 147 Penn. St. 219, it was held that failure to look for approaching cars on the part of one about to drive across the tracks of an electric street-railway company is such contributory negligence as will prevent his recovery for injuries received by colliding with a car. The court said:

"If, by looking, the plaintiff could have seen, and so avoided, an approaching train, and this appears from his own evidence, he may properly be nonsuited."

In *Ward v. Railway Co.*, 17 N. Y. Supp. 427, it appeared that plaintiff's intestate was fatally injured while

attempting to drive across a street-railway track. There was evidence that, at any time before reaching the track, deceased, by a glance, could have informed himself of the approach of the car, but that he drove onto the track without looking in either direction. It was held that he was guilty of contributory negligence.

In *Creamer v. Railway Co.*, 156 Mass. 320, the supreme court of that state held that where a person stepped from a horse car at the junction of two streets, and immediately started to cross the track of an electric road, without looking or listening, and was run over by an electric car running at the rate of 15 miles an hour, there could be no recovery, because the deceased was not exercising due care.

We see no more reason for applying the rule that one must look and listen before crossing the tracks of a steam railway than that one must look and listen before crossing a street-car track upon which the motive power is electricity or the cable. In this State it is well settled that persons passing over railroad crossings must exercise care. They must look and listen, and, under certain circumstances, must stop, before attempting the crossing. Electric street-car crossings are also places of danger. The cars are run at a great speed on this street in question. The city ordinance permits it, and the rule must be that, before going upon such tracks, every person is bound to look and listen. If the view is unobstructed, and the pedestrian takes this precaution, there is not much opportunity for him to be injured. It will not do to say that he has discharged his responsibility in case of an accident by looking when some feet away, for he may miscalculate the distance and the speed of the car. To avoid danger, he must look just before he enters upon the track. This was the rule laid down by this Court in *Houghton v. Railway Co.*, 99 Mich. 308. The uncontradicted evidence

shows that the car was lighted with five electric lights inside, and carried the signal lights required by the ordinance. Others saw these lights, and it does not seem to be disputed that, had the plaintiff looked just before going upon the track, he would have seen the car.

Defendant requested the court to charge the jury that under the evidence the plaintiff could not recover. This request should have been given upon the facts shown by this record.

The other questions do not become important.

Judgment is reversed, and a new trial ordered.

GRANT and HOOKER, JJ., concurred with LONG, J. McGRATH, C. J., concurred in the result. MONTGOMERY, J., did not sit.