Argued 20 April, decided 1 May, 1903; rehearing denied 28 November, 1904.

### WOLF *v.* CITY RAILWAY COMPANY.

[72 Pac. 329, 78 Pac. 668, 1 St. Ry. Rep. 667.]

When Negligence is Question for Jury.

1. Where different inferences may reasonably be deduced from the testimony the question of negligence should be submitted; but not where only one inference can be reasonably deduced. In the latter instance it is the duty of the court to so declare, and the jury may be peremptorily instructed accordingly.

STREET RAILWAYS — DUTY TO LOOK AND LISTEN.
2. One who fails to look and listen for a car before crossing a public street in daylight at a place where his view is unobstructed is guilty of contributory negligence, and cannot recover even though the street car company may also have been negligent.

ACCIDENT AT CROSSING — CONTRIBUTORY NEGLIGENCE.
3. Where one approaching a street railway track stops near by, the motorman in charge of an approaching car has a right to assume that he intends to wait until the car passes, and is not guilty of negligence in releasing his brakes at the time; but the pedestrian is guilty of negligence if he suddenly starts to cross in front of the car.

IDEM.
4. One who in broad daylight stops beside a street car track till the car approaching, though at an unlawful speed is within a few feet of him, when he attempts to cross in front of it, is guilty of contributory negligence, as matter of law, barring recovery for his injury.

From Multnomah : JOHN B. CLELAND, Judge.

Action by Mollie Wolf, as administratrix of the estate of Isaac Wolf, deceased, against the City & Suburban Railway Company. Defendant appeals from a judgment of $500 for plaintiff. Two opinions were written in the case, the first by Mr. Justice BEAN, and the one on rehearing by Mr. Chief Justice MOORE.    REVERSED.

Statement by MR. JUSTICE BEAN.

On August 26, 1902, Isaac Wolf, while crossing First Street at the intersection of Mill, in the City of Portland, was killed by one of defendant's cars. The plaintiff was appointed administratrix of his estate, and brought this action to recover damages for his death, on the ground that it was caused by the negligence of the defendant. The complaint alleges that there is a steep grade or incline from Montgomery to Mill Street; that at the time of the accident one of defendant's cars was being run down this grade at a reckless, dangerous, and excessive rate of speed, and without any warning being given of its approach to the crossing ; that by reason of such negligence, and without any fault on his part, Wolf was struck by the car and killed. The answer denies the negligence alleged, and avers that the defendant's agents and servants were in the

exercise of due care and caution, and that the accident was due to the contributory negligence of Wolf. At the close of the testimony, the defendant requested the court to charge the jury to return a verdict in its favor. This motion was overruled, the jury found a verdict in favor of the plaintiff for $500, and from the judgment entered thereon this appeal is taken.

For appellant there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. John M. Gearin.*

For respondent there was a brief over the name of *Bernstein & Cohen,* with an oral argument by *Mr. D. Solis Cohen.*

Mr. Justice Bean delivered the opinion.

The sole question for our determination is whether the court erred in refusing defendant's request to direct a verdict in its favor. The defendant has two parallel tracks, about six feet apart, on First Street, and the deceased was killed by one of its northbound cars on the east track. The evidence for the plaintiff as to the circumstances of the accident consists of the testimony of Joseph Friedman, Joseph Ruvensky, Mrs. Walker, Mrs. Alter, and Mrs. Motts. Friedman, when the accident occurred, was standing on the west side of First Street, about forty or fifty feet north of Mill, and about one hundred feet away. He first saw the car when it was near Montgomery Street, but paid no particular attention to it afterward until he heard some one call out, when he looked up, and saw it strike Wolf. He testified that the car was running at a rapid rate of speed; that he heard no bell rung, or warning given of its approach to the crossing, and first saw the deceased on the track in front of the car just before it struck him. Mrs. Walker and Mrs. Motts were standing on the north side of Mill Street, waiting to take the car to go down town.

They both testified that they saw the car approaching, and that they heard no bell or gong sounded, and that they saw Wolf crossing the street, and did not see him stop, but, on cross-examination, said that the first they saw of him was just before he was struck by the car. Mrs. Alter, who was standing near the door of her place of business, on the east side of First Street, about twenty feet south of its intersection with Mill, stated that she first saw the car about the middle of the block, coming from Montgomery toward Mill Street; that she saw Wolf crossing First Street on Mill, from west to east; that she heard no gong sounded, and the car was coming very fast; that she watched both Wolf and the car until the accident happened; and that Wolf walked straight across the street, without stopping. On cross-examination she testified that she was playing with a child at the time, and calling its attention to the approaching car; that she first saw Wolf coming from the west side of First Street, and did not see him stop until he was run into by the car. Ruvensky was on the west side of First Street, above Mill, going north. He testified that while he was going down the street the car passed him, and that he saw Wolf crossing Mill Street, and he did not stop; that he did not see him when the car struck him because he (witness) was on the other side of the street; that the car was running fast; and that he did not hear the bell or gong sounded. On cross-examination he said that he first saw Wolf when he was on the "first track."

The evidence for the defendant consists of the testimony of passengers aboard the car, and of its operators. C. Grohs was a passenger on the car at the time of the accident, standing on the front platform, at the right of the motorman. He testified that when the car was about the middle of the block between Montgomery and Mill streets

he saw Wolf on Mill; that the motorman immediately rang his bell and slacked up the car; that when Wolf reached the west track he stopped in the middle of it, apparently to let the car go by; that the motorman then loosened up the brake, and the car started ahead, but when it was within seven or eight feet of the crossing Wolf suddenly attempted to pass in front of it, when the motorman again applied the brake, but was unable to stop the car in time to prevent the accident. J. R. Carswell, also a passenger on the car, was standing on the west side of the front platform. He testified that soon after the car passed Montgomery Street he saw Wolf step from the sidewalk to the street, as though to cross to the east side; that the view was unobstructed, and there was nothing to prevent Wolf from seeing the car; that the motorman immediately rang his bell, slowed down the car, and ran within about twelve feet of the crossing, when Wolf stopped on the west track as if to let the car pass, and the motorman loosened the brake and started forward again; that about the same time Wolf started to cross in front of the car, and was struck by it, although the brakes were immediately applied. Joseph S. Bier was standing on the rear step on the west side of the car. He testified that he saw Wolf crossing the street; that the motorman rang his bell and slowed down, and, when the car came near Mill Street, Wolf stopped and looked toward it; that the motorman then loosened the brake and let the car run down to the crossing, but the witness did not see the accident, his view being obscured by the car. Mrs. Gardner and Mrs. Parks were in the car, and both testified that they heard the bell ring, and that the car slowed down; one of them even testifying that it actually stopped before it reached the crossing. B. W. Rose said that he was riding in the car, and that his attention was attracted by the sound of the bell, as it was rung in a quick, sharp

manner, and the car checked up suddenly, but that he did not see Wolf. Frank Keller was standing on the front platform of the car, but did not see Wolf at the time of the accident, because some one was standing in front of him. He testified that the gong was sounded several times, and the speed of the car slackened, before it reached Mill Street, and when it got within about ten feet of the street the motorman suddenly applied the brakes, and about the same time the witness heard some one call out, and then saw Wolf directly in front of the car.

The motorman stated in his testimony that when about the middle of the block between Montgomery and Mill streets he saw Wolf going from the west to the east side of First; that witness immediately commenced ringing the bell and slowing the car down; that he continued to ring the bell and slacken the speed of the car until within about twenty-five or thirty feet of the crossing, when Wolf stopped in the middle of the west track, and the witness, supposing that he was intending to stand there until the car passed by, released the brake, and let the car roll down to the crossing at a speed of three or four miles an hour; that when within about ten feet of the crossing, Wolf suddenly started to pass rapidly in front of the car, when the witness immediately applied the brakes as tight as he could, but was unable to stop the car in time to prevent its striking Wolf; that from the time the car was about twenty or thirty feet from the crossing until it reached a point about eight or ten feet from it Wolf was standing on the west track, and looking toward the car, there being nothing to obstruct his view; that in the middle of the block the car was running at a probable rate of eight or ten miles an hour, but before it reached the crossing it was slowed down to about three miles. The conductor did not see the accident, as he was inside the car, but he testified that he heard the gong, and that the car slowed down to

three or four miles an hour, and that just before it reached the crossing he heard three or four sharp rings of the gong, and felt the car give a jar or lurch, as if the brakes had been suddenly set.

From the testimony on behalf of the defendant the conclusion is irresistible that Wolf saw the approaching car, and first thought that he would stop, and wait for it to go by, but probably concluded that he could safely pass in front of it, and in attempting to do so was struck and killed. And it is practically uncontradicted. All the witnesses for the plaintiff who testified on the subject, unless perhaps it was Mrs. Alter, stated they did not see Wolf until about the time he was struck by the car. Mrs. Alter testified through an interpreter. It is possible to argue from her testimony, as contained in the record, that she intended to say that she saw Wolf all the time after he started across the street until the accident occurred, but the physical conditions were such that it was impossible for her to have had him in view during the entire time. She was on the street south of the crossing, standing between it and the approaching car. She was pointing out the car to the child with whom she was playing, so that her attention must have been more centered on it than on Wolf. It was impossible for her to see both the car and Wolf at the same time, since they were in opposite directions. Again, she was on the east side of the street, and the car must necessarily at some point have passed between her and Wolf, during which time her view was, of course, obstructed. It cannot be said, therefore, that her testimony materially contradicts the evidence for the defendant, or that it alone is sufficient to take the case to the jury, in view of the positive and overwhelming testimony to the contrary of persons whose attention was particularly attracted to the conditions at the time.

1. Where there is a substantial conflict in the testimony, or even where it is undisputed, but different inferences may reasonably be drawn from it, the question of negligence is always for the jury, and the court should not direct a verdict for defendant: *Huber* v. *Miller*, 41 Or. 103 (68 Pac. 400); *Stager* v. *Troy Laundry Co.* 41 Or. 141 (68 Pac. 405). But, where there is no substantial conflict, and only one inference can reasonably be deduced from the testimony, the question is one of law for the court, and, in our opinion, this is a case calling for its application.

2. The deceased was crossing a public street, in broad daylight, at a place where his view was unobstructed. It was therefore his duty to look and listen for a car before crossing the track, and, if he did not, he was guilty of such contributory negligence as would preclude recovery (*Smith* v. *City Railway Co.* 29 Or. 539, 46 Pac. 136, 46 Pac. 780, 5 Am. & Eng. R. Cas. N. S. 163 ; *McGee* v. *Consolidated St. Ry. Co.* 102 Mich. 107, 60 N. W. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507 ; *Ward* v. *Rochester E. R. Co.* 17 N. Y. Supp. 427 ; *Watkins* v. *Union Traction Co.* 194 Pa. 564, 45 Atl. 321), notwithstanding the defendant may have been negligent in running the car at a dangerous rate of speed: *Sego* v. *Southern Pac. Co.* 137 Cal. 405 (70 Pac. 279).

3. In addition to this, the testimony shows that he saw the approaching car, and stopped when near the track, but afterwards concluded that he had time to pass safely in front of it. When he stopped, the motorman had a right to assume that he intended to wait until the car passed before crossing the track, and was not guilty of negligence in releasing his brakes at the time : *Sanders* v. *Southern Elec. Ry. Co.* 147 Mo. 411 (48 S. W. 855); *Gray* v. *Fort Pitt Trac. Co.* 198 Pa. 184 (47 Atl. 945). Under the evidence adduced, therefore, we are of the opinion that the unfortunate accident was not due to the negligence of the defendant, and the judgment must be reversed, and the cause

remanded for such further proceedings as may be deemed proper, not inconsistent with this opinion.   REVERSED.

---

Decided 28 November, 1904.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE MOORE delivered the opinion.

4. A petition for a rehearing having been filed, it is contended therein that an error was committed in concluding that the lower court improperly denied defendant's request to direct a verdict in its favor. It is argued that in reversing the judgment, which is based on a verdict, this court reviewed conflicting testimony, and deduced a conclusion from what it considered to be a preponderance, thereby invading the province of the jury. The testimony of plaintiff's witnesses tends to show that the day on which the accident occurred was clear and dry; that the rate of speed prescribed by ordinance for the operation of street cars in the City of Portland was eight miles an hour; that the car causing the injury was heavily loaded with passengers, and running down a steep grade faster than the regulations permitted; that the gong on the car was not struck, nor the speed slackened, until after the injury was inflicted; and that Mr. Wolf, though possessed of good eyesight and hearing, did not halt in crossing the street in front of the approaching car. None of plaintiff's witnesses, except possibly Mrs. Alter, seems to have observed Wolf as he crossed the street until he reached either the west line of rails — the car being on the east track — or until the car had nearly reached the crossing, so that the testimony of defendant's witnesses that he halted in the western double track until the car was nearly opposite him before proceeding on his journey is not contradicted. Joseph Friedman, plaintiff's witness, who beheld the accident, testified that he did not

see Mr. Wolf until one more step would have taken him out of harm's way. Mrs. Alice Walker, a witness for the prosecution, says she first saw Wolf on the west side of First Street, as he was crossing it, but on redirect examination she qualifies this declaration by stating: "I never noticed him until the car hit him there." Mrs. Motts, another witness for the same party, who was standing with Mrs. Walker at the northeast corner of First and Mill streets, waiting for the car, at the time of the accident, in answer to the question, "On what part of the crossing was he [Wolf] when you first saw him?" replied, "I was on the corner, and he came right between the car and me." On cross-examination she stated that when she first saw Wolf he had reached the west track. "Q. And you had not seen him before that? A. No, sir."

Mrs. Eva Alter, who testified by an interpreter, said she was standing south of the southeast corner of Mill and First streets at the time of the accident; that she first saw Wolf as he started to cross the latter street; that he walked without stopping; and that she watched the car and Wolf from the time she saw them until the accident happened. The writer hereof entertained the opinion that the testimony of this witness respecting Wolf's actions immediately preceding the accident was sufficient to dispute the testimony given by defendant's witnesses, and that based thereon the cause was properly submitted to the jury; but the opinion heretofore rendered states that the position occupied by Mrs. Alter was such as to render it physically impossible for her to have seen Wolf all the time he was crossing the street, because the car, after passing her, obstructed her view of him, and the petition for a rehearing, referring to this declaration, admits: "This is undoubtedly true." Accepting such concession as a correct statement of the fact, a review of the testimony given by defendant's witnesses becomes necessary.

G. Grohs, who was standing on the front platform of the car, at the right of the motorman, says that he first saw Mr. Wolf crossing the street, whereupon the gong was struck and the brake applied, causing the speed of the car to slacken; that Wolf stopped in the west track, whereupon the brake was released, and, the car going forward, he jumped in front of it when it was about seven or eight feet from him. On cross-examination, in referring to plaintiff's husband, the witness was asked, "When he stopped, how far was the car from him at that time?" and answered: "I guess about fifty feet. Q. What was Mr. Wolf doing during the time the car was running that forty feet? A. He just made a stop there." The testimony of this witness is corroborated by that of C. F. Lawson, the motorman in charge of the car, and also by that of J. R. Carswell, a passenger thereon at the time of the accident. Joseph S. Bier, another passenger, in speaking of Wolf as he halted in the west track, testified as follows: "He looked right at the car." Lawson, in referring to Wolf at the time the brake was applied, says: "When I stopped he looked up towards the car." This witness, in answer to the question, "Was there anything between the car and him to obstruct his vision?" replied, "There was nothing to obstruct his view at all." Carswell, who saw plaintiff's husband on the track, was asked, "Was there anything to obstruct your view of Wolf?" and answered, "Nothing." A fair analysis of the testimony shows that there is no controversy or dispute in relation to Wolf's having stopped on the west line of rails, and remained in that position until the car had reached a line about ten feet south of him, when, suddenly trying to cross in front of it, he sustained an injury which caused his death.

Though the witnesses for the respective parties disagree in their testimony in several material matters, the plaintiff's right of action depends on the consideration of a

single question — whether or not her husband's proximity
to the car when he attempted to cross in front of it affords
such evidence of contributory negligence that the trial
court could say, as a matter of law, that it precluded a re-
covery of the damages sustained in consequence of the
injury inflicted. In discussing this subject it will be as-
sumed that the testimony given by plaintiff's witnesses
and the inferences deducible therefrom are true, and tend
to show that at the time of the accident the car was run-
ning at a prohibited rate of speed, and that the gong was
not sounded. Wolf was attempting to cross a public street
on a walk provided for that purpose, and had a right to
pursue his journey on the line selected. If a pedestrian
could not legally cross a line of rails in a populous city in
front of a street car, his travel on the public thorough-
fares occupied by street railways would necessarily be
limited to a few hours at night, when cars cease running,
for in the daytime they constantly follow each other in
rapid succession, and any crossing of the street would
necessarily be in front of a car. So, too, a street car com-
pany, having secured a franchise, has a lawful right to
propel cars along its tracks, and is not compelled to desist
therefrom because some public crossing on its lines may
be occupied by pedestrians, for, if the converse were true,
no street car could be operated except when inclemency
of weather or darkness suspended such travel, thereby
rendering the operation of street cars unprofitable and of
no use to the public. Travelers on foot and in carriages,
as well as street car companies, have equal and reciprocal
rights in and to the use of public streets, and neither can
deprive the other of the enjoyment thereof. Because a
person is authorized to cross a street car track, the exer-
cise of such right will not justify his attempting to do so
in front of an approaching car, when danger therefrom
may reasonably be apprehended. The rights of travelers

and of street cars to use public streets being commensurate, and the degree of responsibility of each measured by the facility with which their respective movements may be controlled, the crossing of a line of rails by a person *sui juris* will not constitute contributory negligence unless the proximity of an approaching car would have warned an ordinarily prudent mind of the impending danger: *Campbell* v. *Los Angeles Trac. Co.* 137 Cal. 565 (70 Pac. 624). In that case Mr. Justice McFARLAND, in speaking of the duty of a person attempting to cross the track of a street railway in front of a car, says: "Of course, in a case like this there may be undisputed facts from which the legal conclusion of contributory negligence necessarily follows, and this may be so when the collision happens on a street railroad. But, as has been frequently held by this court, the same character of care is not demanded of one crossing a street railroad where cars are frequently passing at a slow rate of speed and can be easily controlled as is demanded of one crossing an ordinary steam railroad running through the country, on which heavy trains, difficult to control, go at stated times with great speed. With respect to a street railroad, the mere fact that a person attempts to cross it when a car is seen to be approaching does not of itself constitute contributory negligence. Of course, one in close proximity to an approaching street car might walk or drive in front of it so suddenly as to clearly be guilty of contributory negligence; but ordinarily, whether or not he was negligent in attempting to cross, under the circumstances of the case, is a question for the jury."

In the case at bar we think the undisputed testimony shows that, though it be admitted that the car was running at a prohibited rate of speed, and that no bell was rung as the crossing was approached, the deceased, having seen the car, attempted to cross in front of it, and in such

proximity thereto that his act conclusively shows such contributory negligence that the trial court should, as a matter of law, have told the jury that plaintiff could not recover for the injury sustained, and hence we are compelled to adhere to the former opinion. It is possible, however, that plaintiff may hereafter be able to prove that when her husband attempted to cross the track the car was farther away than is indicated by the testimony of defendant's witnesses, and what has been here said is not intended to preclude another trial. The petition for a rehearing must be denied, and it is so ordered.

REVERSED: REHEARING DENIED.