Argued September 4, decided September 23, 1913.

## DALRYMPLE v. COVEY MOTOR CAR CO.

(135 Pac. 91.)

**Master and Servant—Liability for Servant's Acts—The Relation.**

There being evidence that a company engaged in selling automobiles sent a chauffeur in its employ with a purchaser of a car to take it through the crowded part of the city, the purchaser being inexperienced, and it undertaking to do this as a part of its general business, and in furtherance of the same, it may be found that during such trip he was its servant, for whose negligence in running into a person it is liable, though on the way he, at the purchaser's request, stopped to pick up automobile accoutrements which the purchaser had bought.

[As to the liability of an employer for the torts of his employee, see notes in 35 Am. Dec. 192; 55 Am. Dec. 317. As to when the relation of master and servant exists, see note in 22 Am. St. Rep. 459.]

From Multnomah: HENRY E. MCGINN, Judge.

Department 2.   Statement by MR. JUSTICE BEAN.

This is an action by John Alexander Dalrymple, by Katherine Dalrymple, his guardian *ad litem,* against the Covey Motor Car Company to recover damages for personal injuries. The cause was tried before a jury and a verdict rendered in favor of plaintiff, assessing his damages at $5,000. From a resulting judgment defendant appeals.

The complaint was in the usual form in such cases. Defendant denied any negligence on its part and pleaded contributory negligence on the part of plaintiff, and further pleaded that at the time of the accident "Harrington was a chauffeur employed by the defendant herein, but that on the said 16th day of May, 1911, the said Harrington was operating this Cadillac automobile under the direction and control of the owner thereof (Dunham)," and also pleaded that the occurrence was purely an accident.

It appears from the record that the defendant is a corporation engaged in the business of selling automobiles in the City of Pórtland, Oregon. A few days before the accident alleged in the complaint, one Dunham purchased an automobile of the defendant. In accordance with the arrangement, F. B. Harrington, an employee of the company, two days prior to the accident gave Dunham instructions as to running the automobile. The car remained in the defendant's garage until the morning of the 16th of May, 1911, about 8 A. M., when Dunham came to take it away. Mr. Barnes, the defendant's head salesman in the Cadillac department, instructed Harrington to take the car through the populous part of the city to East Portland, as Dunham had had no experience as a driver, where it was intended that the latter should take charge of the same himself. On the way Harrington and Dunham stopped at different places and picked up some articles that Dunham had purchased the day before, consisting of automobile accoutrements, etc. About 9 A. M., while driving on Ninth street, the car collided with the plaintiff. This the jury found was owing to the negligence of the chauffeur, Harrington, which is not questioned upon this appeal. After the accident Harrington took the injured boy to the hospital and then carried the boy's mother there,

after which he took Mr. Dunham over to the East Side, where he left him and took the street-car home. It appears that Harrington was employed by the Covey Motor Car Company in the capacity of a chauffeur and garage-hand; that he generally unloaded cars when received and took them to the garage; that he drove them to and from the garage nights and mornings, and at different times took parties out. It also appears that he instructed purchasers with reference to the operation of cars and had the general handling of the latter as a rule. Harrington testified that he had served in different capacities in the auto business for about nine years; that his object in going with Dunham that morning was "simply to take the car through the city and to get him over on the East Side, out of town, where he could go from there by himself, because I refused to let him drive through town alone"; that Dunham was not an experienced driver; that the salesman of the Covey Motor Car Company also gave instructions as to operating the cars; that at the time of the accident the owner of the car was in the front seat with him and they were driving south on Ninth Street at about the crossing; that there was a dirt wagon going north on Ninth Street, and, when the front end of the machine was about even with the wagon, the plaintiff, a schoolboy, came around the end of the wagon and was struck by the machine.

AFFIRMED.

For appellant there a brief over the names of *Wilbur, Spencer & Dibble* and *Mr. Edward B. Watson,* with oral arguments by *Mr. Schuyler C. Spencer* and *Mr. Watson.*

For respondent there was a brief over the name of *Davis & Farrell,* with an oral argument by *Mr. Wilfred E. Farrell.*

MR. JUSTICE BEAN delivered the opinion of the court.

The defendant contends upon this appeal that the plaintiff cannot recover for two reasons: (1) That Harrington was not acting for the Covey Motor Car Company at the time of the accident but was acting for Dunham, the owner of the car; (2) that Harrington was acting outside the scope of his employment in driving Dunham around to pick up stuff which Dunham had purchased the day before. The facts conceded and which appear reasonably clear from the record are as follows: That at the time of the negligent act Harrington was employed by the Covey Motor Car Company and, among other things, instructed purchasers how to operate automobiles; that Harrington had given instructions to Dunham two days prior to the accident; that between the time of giving such instructions and the date of the accident the car remained in the possession of the Covey Motor Car Company, the legal title being in Dunham; that the Motor Car Company sent Harrington out with Dunham on the morning of the accident and paid Harrington for the services rendered; that all the head salesmen gave instructions to prospective purchasers; that at the time of the accident Dunham had had no experience in operating the car and was not competent to do so; that for this reason Harrington was sent to take him through the crowded part of the city. At the close of plaintiff's evidence counsel for defendant moved for a nonsuit, and at the proper time requested the court to direct a verdict in favor of defendant, and saved exceptions to the instructions of the court to the jury.

The main question for determination is: Whose servant was Harrington at the time of the injury; that is, was he working for the Covey Motor Car Company and within the scope of his employment, or was he for

the time being the servant of Dunham, the owner of the car? Upon this question the court instructed the jury in substance that: "The question as to the ownership of the car is a circumstance to be considered by you, but the important point in the case is: Whose employee was Harrington? You determine whose work he was engaged in doing. Was he engaged in doing the work of the Covey Motor Car Company, or was he engaged in doing Mr. Dunham's work? The law says that I am responsible for the acts of my servant or my employee done whilst he is engaged in my work. It is a matter of social duty which makes me responsible for his acts when he is doing my work. Not such as who could direct the details, nor whether it is a fact that Dunham is directing, might pay the bills for the services of this man, but whose work was he engaged in, and who had the authoritative control over him? And who selected him? Who paid him? Who had the right to discharge him for incompetency or for any other reason? These questions are submitted to you. Of course the relation between the Covey Motor Car Company and this man Harrington would have to be suspended, not permanently, but during that time, and a new relation must have sprung up between him and Mr. Dunham. If you determine that that relation which existed between Harrington and the Covey Motor Car Company had been suspended and that a new relation had sprung up between the driver of that car and Mr. Dunham, then, of course, he was the servant of Mr. Dunham and not of the Covey Motor Car Company, and you cannot find against the Covey Motor Car Company but must find for the defendant."

The learned counsel for the parties have tersely and ably presented the question for determination by their oral arguments and briefs. They do not differ so

much in regard to the law as in the application of the principles thereof wherein the difficulty arises. Counsel for defendant submit that there was no evidence showing that Harrington was engaged in the services of the defendant company at the time of the accident and within the scope of his employment sufficient to be submitted to the jury. It was said in *Ritz* v. *Wheeling,* 45 W. Va. 262, 263 (31 S. E. 993, 994, 43 L. R. A. 148), by Mr. Justice BRANNON, that: "Where the case turns on the weight and effect of the evidence in proving or not proving facts necessary to support the action, and the evidence appreciably goes to prove such facts, it ought to go to the jury: * * but where the case is not such, but one of undisputed or indisputable facts, leaving it only a matter of law whether the facts show a liability on the defendant, the court should take the case from the jury and direct a verdict, if the evidence shows no case for the plaintiff * * ": See, also, *Durbin* v. *Oregon R. & N. Co.,* 17 Or. 5 (17 Pac. 5, 11 Am. St. Rep. 778); *Coffin* v. *Hutchinson,* 22 Or. 554 (30 Pac. 424); *Wolf* v. *City Ry. Co.,* 45 Or. 446 (72 Pac. 329, 78 Pac. 668).

Upon the main question, we note that in Berry's Automobile Law, at page 134, it is stated: "In determining whether a particular act was committed by a servant within the scope of his employment, the decisive question is: Was he at the time doing any act in furtherance of his master's business? If he was, the master is responsible. Where, in compliance with a contract of sale of an automobile, the defendant furnished the plaintiff a chauffeur to teach him to operate the automobile, and on account of the negligence of the chauffeur while so employed the plaintiff was injured, it was held that the chauffeur was the servant of the defendant at the time of the accident, and consequently the defendant was liable for his negligence":

See *Burnham* v. *Central Auto Exchange* (R. I.), 67 Atl. 429; *Shepard* v. *Jacobs,* 204 Mass. 110 (90 N. E. 392, 134 Am. St. Rep. 648, 26 L. R. A. (N. S.) 442).

The Supreme Court of the United States in the case of *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, at page 221 (29 Sup. Ct. Rep. 252, at page 254, 53 L. Ed. 480), makes the power of control the test of liability.   Mr. Justice Moody, in stating the reason of the rule, said: "In substance it is that the master is answerable for the wrongs of his servant, not because he has authorized them nor because the servant, in his negligent conduct, represents the master, but because he is conducting the master's affairs, and the master is bound to see that his affairs are so conducted that others are not injured. * * The master's responsibility cannot be extended beyond the limits of the master's work.   If the servant is doing his own work or that of some other, the master is not answerable for his negligence in the performance of it. * * To determine whether a given case falls within the one class or the other, we must inquire: Whose is the work being performed?   a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.   Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking."

In the case of *Driscoll* v. *Towle,* 181 Mass. 416 (63 N. E. 922), cited in the Anderson case, the defendant was engaged in general teaming business.   He furnished a horse, wagon and driver to the Boston Electric Light Company.   The driver reported to the electric light company and received directions as to what to do and where to go from an employee of that company, but at night returned the horse and wagon to

the defendant's stable and received pay from the defendant. While traveling to carry out an order received from the company, he negligently injured the plaintiff, who brought an action to recover for the injuries, alleging that the driver was the defendant's servant. It was held that there was evidence which would warrant the jury in finding that the driver continued to be the defendant's servant. Mr. Chief Justice HOLMES, speaking for the court, said: "But the mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign, as the master sometimes was called in the old books. * * But the person who receives such orders is not subject to the general orders of the party who gives them. * * There is not that degree of intimacy and generality in the subjection of one to the other which is necessary in order to identify the two and to make the employer liable under the fiction that the act of the employed is his act": See, also, *Phila. & R. C. & I. Co.* v. *Barrie,* 179 Fed. 50 (102 C. C. A. 618); Labatt, Master & Servant (2 ed.), § 56, and note.

If the servant at the time of the injury was engaged in the performance of an act which, if continued until its completion, would have furthered the master's business and been within the scope of the servant's employment, the master would be liable, even though the act occurred at a place to which his duty did not necessarily call him: *Barmore* v. *Vicksburg, S. & P. R. Co.,* 85 Miss. 426 (38 South. 210, 3 Ann. Cas. 594, 70 L. R. A. 627, 629); *Geraty* v. *Nat. Ice Co.,* 16 App. Div. 174 (44 N. Y. Supp. 659). We quote from 1 Shearman & Redfield on Negligence (5 ed.), Section

146: "The master is responsible for the negligent acts or omissions of his servants in the course of their employment, though unauthorized or even forbidden by him, and although outside of their 'line of duty,' and without regard to their motives." And the master cannot escape liability even though the acts of his servants were "unauthorized, willful, and wrongful": 1 Shearman & Redfield, Neg. (5 ed.), § 150; 1 Thompson, Neg., §§ 518, 519. See, also, *Alabama G. S. R. Co.* v. *Harris,* 71 Miss. 74, 76 (14 South. 263); *Richberger* v. *Amer. Express Co.,* 73 Miss. 161 (18 South. 922, 55 Am. St. Rep. 522, 31 L. R. A. 390).

In determining whether the act of Harrington was committed within the scope of his employment by the Covey Motor Car Company, the decisive question is not whether he was acting in accordance with the instructions of his master nor who owned the automobile at the time. While these are helpful in determining the question, the real test is: Was he at the time doing any act in furtherance of the company's business? Where a servant having completed his duties to his master then proceeds to prosecute some private purpose of his own, the master is not liable. If the servant while engaged about his master's business merely deviates from the direct line of duty to accomplish some personal end, the master's responsibility may be suspended. But while the servant is pursuing his line of duty within the scope of his employment, even if in violation of express orders, a deviation therefrom is not an abandonment of the master's service: *Mulvehill* v. *Bates,* 31 Minn. 364, 366 (17 N. W. 959, 47 Am. Rep. 796); *Weber* v. *Lockman,* 66 Neb. 469 (92 N. W. 591, 60 L. R. A. 313); *Ritchie* v. *Waller,* 63 Conn. 155 (28 Atl. 29, 38 Am. St. Rep. 361, 27 L. R. A. 161). Where the relation of master and servant is established, the question of whether in the particular instance the

servant was acting within the scope of his employment, if there is no conflict in the facts, is a question of law for the court.   If there is such conflict, it is a question of fact to be submitted to the jury: *Illinois Cent. R. R. Co.* v. *Latham,* 72 Miss. 32, 36 (16 South. 757) ; *Corper Brewing & Malting Co.* v. *Huggins,* 96 Ill. App. 147; *Krzikowsky* v. *Sperring,* 107 Ill. App. 493.

In *Barmore* v. *Vicksburg S. & P. R. Co.,* 85 Miss. 426 (38 South. 210, 3 Ann. Cas. 594, 70 L. R. A. 627), it was held that in order to escape liability it devolved upon the master to prove that the servant had abandoned the duties of his employment and gone about some purpose in which the master's business was not concerned and which was not incident to the employment for which the servant was hired, citing *Ritchie* v. *Waller,* 63 Conn. 155 (28 Atl. 29, 38 Am. St. Rep. 361, 27 L. R. A. 161).

The cases of *Gresh* v. *Wanamaker,* 221 Pa. 28 (69 Atl. 1123), and *Lotz* v. *Hanlon* (Pa.), 66 Atl. 525, indicate that the ownership of the car is not the determining factor in deciding whose work Harrington was performing at the time of the injury.

In Wood on Master and Servant (2 ed.), Section 279, it is said: "The test of liability in all cases depends upon the question whether the injury was committed by the authority of the master expressly conferred or fairly implied from the nature of the employment and the duties incident to it. * * "

1 Shearman & Redfield on Negligence (5 ed.), Section 162, reads: "If the hirer is vested for the time with exclusive control with the right to discharge the servants and to employ others, he alone is responsible for their defaults": See, also, *Brown* v. *Smith & Kelly,* 86 Ga. 274, 277 (12 S. E. 411, 412, 22 Am. St. Rep. 456).

The question as to who had the right to control the servant Harrington is of more materiality than who

did control him.   In *Linnehan* v. *Rollins,* 137 Mass. 123, 125 (50 Am. Rep. 287), an instruction was approved to the effect that "the absolute test is not the exercise of power of control but the right to exercise power of control": See *Ash* v. *Century Lbr. Co.,* 153 Iowa, 523 (133 N. W. 888, 891, 38 L. R. A. (N. S.) 973).

In the case of *Perkins* v. *Stead,* 23 Times Law Report, 433, the defendant purchased and paid for a motor car in London.   The vendor agreed to provide a driver to drive the car to a certain place outside London and deliver it there, as the defendant's driver did not know the locality and had no experience of the class of car purchased.   While the car was being driven by the driver supplied by the vendor, from London to the place named for delivery, it collided with and damaged a motor bicycle owing to the negligence of the driver.   At the time the defendant, his driver, and his son were in the car.   In an action in the County Court by the owner of the bicycle, the judge held that the driver of the car, though he was the general servant of the vendor, was at the time under the control of the defendant, who had the property in and possession of the car, and that therefore the defendant was liable to the plaintiff for the negligence of the driver.   The judgment was upheld on the authority of the case of *Jones* v. *Scullard,* L. R. 2 Q. B. Div. 565. In the latter case the defendant was being driven in his brougham when the driver lost control of the horse, which did considerable damage.   The vehicle, harness and horse, as well as the livery worn by the driver, belonged to the defendant.   The driver was in the employment of one Walker, a livery-stable keeper, at whose stable the defendant kept the brougham and horse.   The question as to the driver's negligence, under the circumstances of the case, was left to the jury, which action was upheld upon appeal.

Can we say, as a matter of law, that the chauffeur Harrington should have driven the automobile at a dangerous rate of speed, say 60 miles per hour, in the crowded streets of the city if Runham, the new owner, had so ordered? We think not. Such action on his part would have defeated the very object of his employer, the Covey Motor Car Company, in sending him out for the purpose of running the car through the crowded part of the city in safety. Whether the owner, who is conceded to have known little or nothing about running the car, was with the driver while passing through that part of the city or was to meet him at the place where it was intended that the owner should take charge of the car would make but little difference. Presumably the purchaser, during such a ride, could make some observation as to the manner in which his tutor Harrington operated the car. Were it necessary for the act of the chauffeur Harrington to be defined, we would say that the service performed by him for the company on the morning of the accident was of much the same nature as the operation of the car for the purpose of demonstration or instruction. While one buying a car and paying therefor has the right to smash it up as soon as circumstances permit after the same has been turned over to him and he relies upon his own skill to run it, it does not necessarily follow as a matter of law that the vendor of an auto who assumes or undertakes, either expressly or impliedly, to see that the car is properly run for a time can so negligently manage the same as to cause injury to a third person, without being liable therefor. The evidence tended to show, and the jury found in effect, that the company undertook to perform the service as a part of the transaction, in connection with the sale of the automobile, as a part of its general business, and in furtherance of the same; that Harrington,

the servant, was doing the work for his master, the company, and not for himself, nor on his own account, nor as a mere favor to the purchaser; that it was as much a part of the general business of the company as though it had been performed prior to the time of the purchase of the car; that the company alone had the right to control and discharge Harrington. Although the chauffeur may have stopped to pick up articles purchased by Dunham the previous day, the jury may have reasonably inferred that this was a mere matter of detail in compliance with a request or direction, on the part of Dunham, where to go and did not imply that Dunham had the right to direct his tutor, the chauffeur, how to run the machine. It does not appear, neither did the jury find, that Harrington did any part of the work for his own pleasure or on his own account or by virtue of any contract with the owner of the car, nor that he in any way consented to become the servant of Dunham: *Bowie* v. *Coffin Valve Co.*, 200 Mass. 571 (86 N. E. 914). It cannot be said as a matter of law that the relationship of master and servant did not exist between the defendant company and Harrington. The only testimony as to the details of the transaction was that given by Harrington. The evidence was meager and left the matter in doubt to be determined by the jury from the evidence: 1 Thompson, Neg., § 616. The jury might fairly have found from the evidence, taking into consideration all the circumstances, that at the time of the accident Harrington was in the general employ of the defendant and paid by it; that he was under its exclusive control and under the instructions given by Mr. Barnes, the head salesman of the Cadillac department; that he was acting within the scope of his employment in the performance of the company's work; that the defendant then had the sole power to direct and control the

66 Or.—35

chauffeur in running the machine and to discharge him; that a new relation of employer and servant had not sprung up between Dunham and Harrington; and that Dunham did not have the right to direct or control Harrington in the operation of the car. We think there was evidence upon this question sufficient to be submitted to the jury: *Sacker* v. *Waddell*, 98 Md. 43 (56 Atl. 399, 103 Am. St. Rep. 374); *Craver* v. *Ragon* (Tex. Civ. App.), 110 S. W. 489; *Jones* v. *Scullard*, L. R. 2 Q. B. Div. 565. There was no error by the trial court in submitting the question to the jury.

The judgment of the lower court is therefore affirmed.

Mr. Chief Justice McBride, Mr. Justice Eakin and Mr. Justice McNary concur.