### REDDICK v. PRAIRIE OIL & GAS CO.

#### No. 3841.

Court of Civil Appeals of Texas. Amarillo.
June 1, 1932.

Rehearing Denied June 22, 1932.

Willis, Studer & Studer and Ben S. Baldwin, all of Pampa, for appellant.

Madden, Adkins, Pipkin & Keffer, of Amarillo, for appellee.

HALL, C. J.

Mrs. Reddick sued the appellee company to recover $75,000 damages alleged to have resulted when her husband was killed in the city of Pampa by an automobile driven by D. C. Brown, an employee of the appellee company. The case as to Brown was dismissed at the time of the trial, and recovery was sought against the company upon the ground that Brown was its servant, acting within the scope of his employment at the time of the accident.

A jury was impaneled, and at the close of the testimony the court directed a verdict in favor of the company.

The testimony is practically uncontroverted. Without dispute it was shown: That Brown was employed as a pumper by the appellee on what is called the Worley-Reynolds leasehold, situated about six miles south of the city of Pampa. That as a pumper his duties consisted of firing boilers, switching tanks, starting engines, gauging and cleaning tanks, oiling engines, agitating and cleaning out wells, etc. That he was immediately responsible to a head roustabout, and that the roustabout was in turn under the authority of a farm boss. It was shown that Brown had no duties to perform for the company off of the leasehold. At the time of the accident, he was on duty for that month from midnight, working until noon the next day. From noon until midnight his time was entirely at his own disposal. He lived with his father and mother and other members of the family in a house owned by them, but situated on the leasehold, which was held by the appellee company under an oil and gas lease. Brown owned an automobile, which he and other members of his family used for their own private purposes. The car was not used by Brown in his work for the company, and in the performance of his work a car was not required, nor did the company require him to use one. It was Brown's habit, when he finished his work at noon, to go to his home, eat a meal, and then sleep. He would then frequently get into his car and drive to Pampa for his own pleasure, returning to his home before midnight. Upon reaching his home, he would change from his "Sunday clothes" to his work clothes, then eat a lunch prepared by his mother, and go to the place where his duties for the company were performed, arriving there just before midnight. He did not go to Pampa every day, but on the day in question, after awaking about 5:30 p. m., he dressed and went to Pampa for his own pleasure and on no mission whatever for the company. After attending two picture shows while in town, he got into his car about 11 o'clock p. m., and started to his home with the intention of following his usual habit, changing his clothes, eating his lunch, and then going to his place of work. That while in the city of Pampa on the return trip home he ran over and killed appellant's husband under circumstances which would probably make him liable for negligence. He testified that he owned the Chrysler car which he was driving at the time of the accident, and had owned it for about five months. That "when I got off my job (at noon) it was not anybody's business what I done. I done as I pleased." That on the day of the accident, after sleeping awhile, about 5:30 or 6 o'clock he went to Pampa alone, and, after fooling around the streets awhile, went to two picture shows that night and got in his car and started home alone. That he never used his car in going from his home to the place where he worked. The farm boss testified that at the time of the accident Brown was working from midnight until noon the following day. That his duties were to take care of wells, boilers, and equipment used in the business of the company. That he knew Brown owned a car, but his duties as a pumper did not include its use. That a pumper was never furnished with a car by the company. That Brown was living in a house situated on the leasehold, but the house did not belong to the company. "That the 'towers' ran from 12:00 to 12:00 and the men were expected to be there as punctually as possible. That on a pumper's job men did not go to work in their Sunday clothes, but it was customary for the pumper to change into work clothes. That this was done either at their residences or at the boiler house. The pumper could change wherever he wanted to. That the Company did not undertake to prescribe the means of transportation. That changing his clothes and going to the place of his employment was not a part of the pumper's work. That the Company did not assume to dictate to employees whether or not they owned automobiles or used them in going about over the country. That they had no objection to men going to work in automobiles if they wanted to."

The case is before us upon two propositions. The second proposition is that the pleadings and evidence clearly raise the issue as to whether or not Brown, as an employee of the company, was negligent in proximately causing the accident in question. The first proposition challenges the action of the court in directing a verdict for the company, because the testimony raises the issue whether

or not Brown, at the time of the accident, was acting within the scope or the course of his employment.

The real question presented for decision is whether or not there are any facts raising the issue as to whether D. C. Brown was an agent or servant of the defendant company and was acting within the scope of his employment at the time of the accident, under circumstances rendering the company liable for his negligence.

That Brown was negligent may be conceded. The counter proposition asserted is that the uncontroverted evidence showing that the appellee's employee Brown was at the time of the collision, about 11 o'clock p. m., driving his own car on the streets of Pampa, where he had gone to attend a picture show for his own pleasure and during his off hours and at a time when he was performing no service for his employer, that the court did not err in directing a verdict for appellee, though it appeared that the said Brown had started to his home, situated on the leasehold where he worked, to change his clothes, eat a lunch, and then begin the performance of his duties as a pumper at midnight.

We think this proposition is sound, and is supported by the decisions in Texas. The appellant, Mrs. Reddick, cites many cases arising under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.) and construing the language of that act, which it may be admitted tend to sustain her proposition. The Workmen's Compensation Law is a special act to provide insurance and compensation for the employees in industrial pursuits. It was designed to do away with certain defenses, such as contributory negligence, the fellow servant rule, etc., and provide a simple method of compensating an injured employee through an insurance scheme, the cost of which would ultimately be borne by the industry and the consumer. The policy of the courts is to construe the Workmen's Compensation Act liberally in favor of the injured party, and a great many judicial declarations with reference to facts in such cases cannot be justly applied to circumstances presented by cases like the one at bar.

The first case relied upon by the appellant is Guitar et al. v. Wheeler et al. (Tex. Civ. App.) 36 S.W.(2d) 325, 327. That case is distinguishable from the instant case in a material particular, in that Tidwell, who was employed as a general foreman on a large farm known as the Guitar Trust Estate, had gone to Big Springs, about fifteen miles distant, taking his wife and children in an automobile. While in town, he met a Mexican who was seeking employment on the Guitar farm, and, after some conversation, Tidwell took him in his car out to the farm, where grubbing was to be done, preparing the land for cultivation. His family returned to the farm with Tid-

well at the same time. It was Tidwell's duty as foreman to employ hands to do grubbing on the farm. In the afternoon of the same day he took the Mexican back to Big Springs, and on the return trip the injury occurred. In that case there was a judgment for the plaintiffs, which was reversed by the Court of Appeals. No new principle is announced in the Guitar Case. The court says: "The liability of appellants is to be determined by the application of the general principles of the law of master and servant. As suggested by appellants, the burden is upon appellees to show that Tidwell did the negligent act causing the death of Wheeler while acting within the scope of his employment. The act must be done in furtherance of the master's business and for the accomplishment of the object for which Tidwell was employed. Beyond the scope of his employment, the servant is as much a stranger to the master as any third person."

It cannot be reasonably contended that Brown was serving his employer or was doing anything within the scope of his employment in the city of Pampa when the fatal accident occurred. He had driven his car to Pampa in the afternoon upon an errand of his own, in no way connected with his duties as an employee of the appellee company, and during hours in which the company had no right to direct his activities or command his services. By his contract of employment he was required to go to work at midnight, and by the express provisions of his contract his duties ended at noon the next day. From that time, until the following midnight, he was free to go wherever he desired, and he was not responsible in any degree to his employer for his actions or any part of his time during this interval. The theory upon which appellant contends that the court erred in directing a verdict against her is that in going from Pampa after attending the picture shows, back to his home, he was going to work. This contention was made in the case of McCoy v. Beach-Wittman Co., 22 S.W.(2d) 714, in which Judge Jackson of this court disposes of the contention against appellant. When he left Pampa, Brown was not going to work. He was going to his home, and but for the accident would have reached it soon after 11 o'clock p. m. Even after reaching his home he was not prepared to go to work until he had had his midnight meal, which his mother prepared for him prior to the hour when he went on duty. Moreover, he had no intention of going to work until he had doffed his Sunday clothes and donned his workman's overalls. These duties related to him personally, and are matters in which the company was in no way concerned and over which they had no control. The company had no authority to require him to eat his supper before going to work, and it was no concern of his employer whether he worked in greasy overalls or went

to the wells attired in Tuxedo. As said in the Guitar Case, he was a stranger upon that lease until midnight. When he left Pampa, he was not going to the leasehold, but was going home. Under some of the cases cited by appellant, arising under the Workmen's Compensation Act, she might reasonably contend that the company could be held liable if Brown had left his home in an automobile and started to the wells and engines where his duties were to be performed and the accident had occurred before he reached the wells, but we have no such case before us. The fact that the house owned by the Brown family had been moved from Borger and placed upon the 160-acre leasehold where Brown's duties were to be performed is a matter of no significance, and is of no more value to the appellant than if it had been constructed upon adjoining property not owned by appellee.

No good purpose can be subserved by an extended discussion of the numerous cases cited by counsel in their respective briefs. The fundamental rule which governs was declared in the leading case of International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902, and has been consistently followed by the courts of this state ever since. Main Street Garage v. Eganhouse Optical Co. (Tex. Civ. App.) 223 S. W. 316; Gordon v. T. & P. Merc. Co. (Tex. Civ. App.) 190 S. W. 748; McCoy v. Beach-Wittman Co. (Tex. Civ. App.) 22 S.W.(2d) 714; Van Cleave v. Walker (Tex. Civ. App.) 210 S. W. 767; Murphy et ux. v. Gulf Production Co. (Tex. Civ. App.) 299 S. W. 295.

The judgment is affirmed.