## TRADERS' & GENERAL INS. CO. v. RATCLIFF et al.

### No. 3885.

Court of Civil Appeals of Texas. Amarillo.
Oct. 19, 1932.

Rehearing Denied Nov. 23, 1932.

Will R. Saunders, of Amarillo, and Lightfoot, Robertson & Scurlock, of Fort Worth, for appellant.

Willis, Studer & Studer, of Pampa, and A. A. Cohn, of Brookhaven, Miss., for appellees.

JACKSON, J.

This suit was instituted in the district court of Gray county, Tex., by the appellees, the mother and brother and sisters of Frank E. Ratcliff, deceased, against the appellant, to recover compensation for the death of deceased, who was accidentally killed on April

2, 1931, while alleged to be an employee of the Dixon Creek Oil & Refining Company, which carried indemnity insurance with appellant.

The appellees presented their application for compensation for the death of the deceased to the Industrial Accident Board of the state, compensation was refused, and they gave notice that they would not abide by the order of the board, and in due time filed this suit.

The record presents no jurisdictional question and no question with reference to the sufficiency of the pleading that we deem necessary to consider in view of the disposition to be made of the appeal.

The court, at the conclusion of the testimony, dismissed the cause of action asserted by the brother and sisters of the deceased.

In response to special issues submitted by the court, the jury found, in effect, that Frank E. Ratcliff sustained personal injuries on April 2, 1931, which resulted in his death, and that such injuries were received while in the course of his employment with the Dixon Creek Oil & Refining Company. They found that the average weekly wage of employees in the vicinity doing the same kind and character of work was $38.94. On these findings the mother, Mrs. M. A. Ratcliff, was given judgment for 360 payments of $10 each, payable weekly, with interest from each maturity date stated in the decree, and the judgment is before us for review.

The appellant assails as error the action of the court in refusing its requested peremptory instruction, and challenges the sufficiency of the testimony to support the finding of the jury that the deceased was killed in an accident arising in the course of and out of his employment and while engaged in and about the furtherance of the affairs of the business of his employer.

The testimony shows: That Frank E. Ratcliff was a single man, 35 years of age, and for some time prior to April 3, 1931, was employed by the Dixon Creek Oil & Refining Company as foreman or "gang pusher" in the yards of its refining plant, situated on about two acres of land six miles from the town of Pampa. That said company had a bunkhouse on said land in which the deceased slept, and that situated on said land was a boarding house at which he took his meals. That the plant, when running, was operated 24 hours per day, but on April 2d the refinery had been shut down for eight or ten days to build a fire still which was necessary to operate the refining plant. That the deceased and the day crew over which he was foreman worked from 7 a. m. to 5 p. m. every day unless a breakdown occurred, and then they worked from 7 a. m. to 7 p. m., the hours after 5 p. m. being overtime. That the deceased and his crew worked by the hour, and on April

2d they worked from 7 a. m. to 7 p. m., at which hour the crew was changed. That after work hours the company had no authority over the movements of the deceased, as he was his own boss and could do what he wished, but, if a breakdown or emergency occurred after work hours, he and his crew, if they could be found, would be called to assist in such emergency work; however, they were not required to hold themselves subject to the call of their employer from 7 p. m. to 7 a. m. That the employees living off the premises of the company were required to furnish their transportation to and from their work and the company had no agreement with them to furnish such transportation. That the company had two trucks and furnished its superintendent with a Ford coupé for his use in its business, and occasionally, when any of these vehicles were going to Pampa on other business for the company, an employee was allowed to ride to or from Pampa. That about 5:30 or 6 o'clock, p. m., Mr. Leroy Davis, the timekeeper for the company, and Mr. Carl Hunter, the superintendent, went from the plant to Pampa in the coupé furnished by the company to the superintendent. That the superintendent remained in town and the timekeeper returned to the plant in the coupé, with the understanding that he would go back to Pampa about 8 o'clock p. m. and get the superintendent and take him to the plant.

Mr. Bob Reed, a witness for the plaintiffs, testified that he was working in the yard of the company on April 2, 1931, and knew Frank E. Ratcliff and that on that day they quit work at 7 p. m. That he lived in Pampa and generally went to and from the plant in his own car, but on April 2d he did not have his car with him at the refinery, as he had loaned it to a friend. That after he quit work he went to the office and asked Mr. Davis, the timekeeper, if he were going to town in a few minutes, and the timekeeper said "Yes," in thirty or forty minutes. The witness then asked if he might ride in with the timekeeper, and was advised that he could. That just at the close of this conversation the deceased came into the office of Mr. Davis and asked what the conversation was, and the witness told him. Deceased then said: "'Well, I will take you to town.' And I said, 'You don't need to mind about it; I will just wait as I am in no hurry anyway.' Then a few more words were exchanged among the three of us, but I don't remember what it was, and something more was said about coming to town, and he said; 'Do you want to go on in Bob?' That is what Ratcliff called me, 'Bob,' and I said 'It doesn't matter; let it go, and I will go in with Leroy' and he said 'I would kinda like to go to town anyway, and if Leroy will let me have the car I will take you on in now, and you won't have to wait,' and I said 'You don't need to

bother; just let it go' and he said 'I want to go, and if it is alright with Leroy I will take you to town' and he asked Leroy for the car, and he said 'What about taking Bob to town in the car' and Leroy didn't answer him the first time, and the second time Leroy said, 'Yes, if you will be back in thirty or forty minutes you can have it.'"

He further testified to leaving the refinery in the car driven by the deceased, about 7:10 p. m. That witness was going to his home in Pampa. That he was not on any business for the company, but purely on a personal mission, and that the car was furnished as a matter of courtesy. That the deceased, so far as witness knew, did not make the trip to Pampa for the company, but was on a personal mission. That deceased drove the Ford coupé into town to witness' home. That there a brief conversation occurred and the deceased left in the car about 7:30, and it would take ten or fifteen minutes for him to reach the refinery.

The timekeeper, Mr. Davis, was called by the plaintiffs and testified substantially as did the witness Reed with reference to what occurred at the time deceased was permitted to take the Ford coupé and drive to town with Reed.

The record discloses that the deceased, in returning to the plant in the Ford coupé, while traveling the Amarillo-Pampa highway, collided with a truck parked on the highway and lost his life.

Article 8309, § 1, R. C. S., after defining what "the term 'injury sustained in the course of employment,' * * * shall not include," provides, "but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere."

The fact that he was permitted by the timekeeper to drive the coupé furnished the superintendent to Pampa to accommodate a coemployee and because he himself wanted to go to town and was permitted the use of the coupé on condition that he return it in thirty or forty minutes, together with the other facts revealed by the record, are insufficient to show that the deceased, at the time he was accidentally killed by the collision of the coupé he was driving with the truck parked on the highway, was an employee of the company engaged in or about the furtherance of the affairs of the business of the company. He lived on the company's premises, took his meals on the premises, and was not on his way from his work to his home, or on his way to his work, when he met his death. He had not gone to Pampa on any business for his employer, and was not required to be back on the premises to engage in any work for the company until 7 a. m. the next day. He was not called to assist in any labor made necessary by a breakdown or an emergency; in fact, the plant was shut down and had been for several days for the purpose of making repairs necessary to resume operations. The testimony was thoroughly developed, there is no substantial controversy as to what the facts reveal and, in our opinion, is insufficient to meet the requirements of the law. Galveston, H. & S. A. R. Co. v. Currie, 100 Tex. 136, 96 S. W. 1073, 10 L. R. A. (N. S.) 367; American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; Ætna Life Ins. Co. v. Burnett (Tex. Com. App.) 283 S. W. 783; London Guaranty & Accident Co. v. Smith (Tex. Civ. App.) 290 S. W. 774; London Guarantee & Accident Co. v. Thetford (Tex. Com. App.) 292 S. W. 857; Royalty Indemnity Co. v. Madrigal (Tex. Civ. App.) 14 S.W.(2d) 106; Southern Casualty Co. v. Ehlers (Tex. Civ. App.) 14 S.W.(2d) 111; Wynn v. Southern Casualty Co. (Tex. Civ. App.) 26 S.W.(2d) 691; Lloyds Casualty Co. v. Rodriguez (Tex. Civ. App.) 36 S.W.(2d) 261; Texas Indemnity Ins. Co. v. Clark (Tex. Civ. App.) 50 S.W.(2d) 465; Reddick v. Prairie Oil & Gas Co. (Tex. Civ. App.) 51 S.W.(2d) 735.

This holding makes it unnecessary to pass upon the other assignments presented by appellant or the cross-assignments presented by appellees.

The judgment is reversed and here rendered for appellant.