## MAIN STREET GARAGE v. EGANHOUSE OPTICAL CO.   (No. 7897.)

(Court of Civil Appeals of Texas. Galveston.
May 13, 1920.)

**1. Master and servant ⬡⟿302(2)—Driving customer's automobile to garage for storage held not within scope of employment.**

Where a garage company's employé having no duties except in connection with his work in the vulcanizing shop and the oil station accompanied a customer to her home to drive her car back to the garage for storage, his act in so doing, which was for the customer's accommodation, was not within the scope of his employment, and the company was not liable for his negligence in driving.

**2. Evidence ⬡⟿123(12) — Witnesses ⬡⟿379 (11)—Testimony as to statements by driver of the automobile made shortly after collision admissible for purpose of impeachment, but not as original evidence.**

In action for injury to automobile in automobile collision, testimony as to statements made by driver of defendant's automobile made shortly after the collision was not res gestæ nor admissible as original evidence, but, in so far as it intended to contradict the testimony of such driver, was admissible for the purpose of impeachment.

Appeal from Harris County Court; Roy F. Campbell, Judge.

Suit by the Eganhouse Optical Company against the Main Street Garage. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Elbert Roberts, of Houston, for appellant.
Hardway & Cathey, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant to recover damages for injury to an automobile owned by appellee resulting from a collision with an automobile which it is alleged was driven in a negligent and careless manner by an agent of the appellant; the collision and consequent injury to appellee's automobile having been caused by the negligence of said alleged agent of appellant.

The damages sought to be recovered were $127.80, costs of repairs of injured automobile, $200, the difference in the value of said automobile after its repair and its value before the collision, and $25, for deprivation of the use of the automobile for the five days during which it was being repaired.

The defendant answered by general demurrer, general denial, special exceptions, and special plea denying that the driver of the automobile that collided with and injured plaintiff's car was in the employ of defendant or was acting as agent or servant of defendant in driving said car.

Defendant further pleaded that the allegations of $200 damages for the difference in the value of the car after it was repaired and its value before it was injured was fraudulently made for the purpose of fixing jurisdiction in the county court at law.

The demurrer and exceptions were overruled, and the cause submitted to a jury upon special issues. Upon return of a verdict by which the jury found that the driver of the automobile which collided with and injured plaintiff's car was in the employ of defendant and was acting in the scope of his employment in driving the automobile, and found plaintiff's damage to be $146.05, judgment was rendered in favor of plaintiff in said sum.

Under an appropriate assignment of error appellant assails the finding of the jury that the driver of the automobile was the servant of defendant and acting in the scope of his employment in driving the car, on the ground that the evidence is insufficient to sustain such finding. Upon this issue the driver, Harry Hall, testified:

"I am working for the Main Street Garage. I have been working there for about six months. I quit and went back and worked awhile, and that was before Christmas that I worked for them. I am 21 years of age. I was working under Mr. Bonner at the oil station. I was vulcanizing in the afternoon. I don't know if it is connected with this garage. I was working with the same business that Mr. Bonner runs. The vulcanizing business was located across the street from the garage. I worked from 12:30 until 6 in the evening. After supper I went to work in the oil station, filling station, waiting on the customers, giving them gas and lubricating oil. I do nothing else outside of giving the cars gas, oil, and water. That is all I do. I do not drive any automobiles around there for any one. I was driving the car of Capt. Moore the night of the collision on Main and Lamar streets. There was a couple of ladies up there, and they asked me if I would go with them, and I could not find the garage man, and I went with them to accommodate them. They lived quite a ways from the garage, and they said if I didn't go with them they would have to walk, and they couldn't find the fellow that runs the garage, and I went with them. I had driven no cars for the Main Street Garage. Since then I have driven cars. People would ask me to go and I went with them. The night the ladies came there there was no one else around besides me; that is, the employés were not there. Mr. Bonner was manager of the garage. Ed Dorsey was night manager of the garage. That night, at the time I went to work, he was there, but when the ladies drove up he was out some place. Neither he nor Bonner instructed me to drive that car."

J. J. Bonner, witness for defendant, having been sworn, testified as follows:

"Harry Hall was working for Main Street Garage at that time. Well, I had taken him on Dr. Boger's recommendation that he was a

tire and vulcanizing man, tire and tube repairing man, they call it, and I was operating a tire repair shop, run in connection with the garage, just purely to take care of my garage customers, and I didn't solicit any outside work. In fact, I didn't have any kind of a service wagon of any kind connected with it, and he would just merely take care of the repair work of the customers, regular customers in the garage, and in the evenings after he would go to his dinner at 6 o'clock and come back at 7; then he would work on the gasoline station from 7 until 11, until such time that the business would die down and the night man at the garage could take care of it by himself. He had nothing whatsoever to do with the storage end of the automobiles in the garage, absolutely nothing. I had instructed him just exactly what his duties were. He knew what he was supposed to do. I had never seen the boy. I didn't know whether he could drive an automobile or not. I had not put him in charge of the storage end of the business; he didn't have a thing in the world to do with it at all. He was only supposed, just like I told you, to work in the vulcanizing shop in the afternoons and draw gasoline at night. I had a regular man that stayed in the garage that took care of that. I had not instructed him or authorized any one to instruct him to go out and bring in any cars for any one."

On cross-examination the witness Harry Hall testified:

"It [the Moore car] was stored at the garage. I brought it back for the purpose of storing it. It stayed in the garage that night. When I came back no one was in charge of the filling station. The manager wasn't there that I know of. I never took the ladies to store the car; I took the ladies to keep them from walking home. The car had been in storage there; it stayed there that night, but I didn't know how long it was there. They have a number of cars there. They charge a regular price. Since that time I have not driven cars for the company, but I have driven them for other people. They take them in for storage. The Main Street Garage collects the storage. If a car is left there, it is for the benefit of the garage. If I meet any one that wants his car put in there, I do it for the benefit of the one that wants to put it in there, the one that asks me to do it. The garage gets the benefit of the service. I have not been doing this all along, sometimes I do. It depends upon the time I have to leave the station. If a car is left there, it is for the benefit of the garage. I don't think I had been working but a few days at that time, the time of the accident. As well as I remember, I think three or four days; I think that was the first week that I worked there. I have kept no account of the cars I have driven in for storage since that time; several. I have gotten Mr. Daley's car. He keeps it stored there regularly. I have gotten Mr. Kinnon's car. He keeps it stored there regularly. When any one wanted me to get their car and take it there for storage, I did it when I could. I didn't look after the cars that were stored in there; didn't shift them around when necessary to make

room and run the cars out to oil them. I served the people generally who came there for service up to that time. I accommodated the people whenever I could."

J. G. Eganhouse, who was driving plaintiff's car at the time of the collision, testified:

"I don't know whether the man who struck me is still working there or not. It is hard to say how many times I have seen him since the accident. I have seen him nearly every time I went there for several months. I have seen this boy working around there. I saw him moving cars around and putting them in place and shifting them in different positions. After the car was driven in I went in the garage, and the car that hit me was sitting in front, and I called the M. P., and we questioned the young man. He was moving the cars around, setting them in different positions, and shifting them from the front, setting them out on the street. I saw the M. P. there. They took the testimony from the boy. I heard the boy's statement. The M. P. questioned the boy, and he stated that he was bringing the car in for Capt. Moore, who had it stored in that garage; that he ran into us, but didn't know how; that he is working there; that the car belonged to Capt. Moore, and it was stored in that garage; and that he was working for the Main Street Garage."

On cross-examination Eganhouse testified as follows:

"The car that ran into me belonged to Capt. Moore is the information I got; that he was placing it in there for the garage. I don't know what he said first, but the car belonged to Capt. Moore, and he was placing it in there for the garage; that he was bringing the car in there. He said he was doing it for the garage. If I didn't state that on direct examination that he said he was bringing it in for the garage, I meant it. He said for the garage. I never said he was bringing it in for Capt. Moore in my statement on direct examination. I am wrong. I said he was bringing it in for the garage. In my direct examination I said the boy was working for the garage, and that this car belonged to Capt. Moore, and that he was bringing it in there for Capt Moore. He said he was placing it there for Moore and the garage. He said he was placing it in there for Moore; that is what he said."

[1] We agree with appellant's counsel that this evidence is insufficient to sustain a finding that Harry Hall, in going with the ladies in the Moore car to their home and driving the car back to the garage, was acting in the scope of his employment as the servant of the appellant. There is nothing in the testimony to contradict his positive statement and that of his employer that he was not employed as a driver for the garage nor authorized by his employer to drive this car or any car for the garage or for its benefit, nor is there any evidence showing that the owner or manager

of the garage knowingly permitted him to go out and bring in for storage the cars of its customers.

We think this evidence shows without contradiction that in going with these ladies to their homes and bringing the car back to the garage Hall was their servant and agent or the servant and agent of the owner of the car. He was acting for them, and not for the garage. The fact that this car was kept in this garage and that the garage received pay for its storage does not affect the question of Hall's authority to drive the car. There is no testimony showing that the garage was under any obligation by contract or custom to send out and bring in cars for storage and this car, it seems, would have been left at the garage by the ladies if Hall had not, for their accommodation and to prevent their having to walk home, gone with them and driven the car back to the garage.

The master is not responsible for an unauthorized act of the servant not within the scope of the servant's employment. In going with the ladies to their home and bringing the car back Hall was not acting in the line of his duty, nor, so far as the evidence shows, in the prosecution of his employer's business, but was acting entirely outside the duties of his employment. He was not employed as a driver nor to work in the storage department of the garage, but in the vulcanizing shop and oiling station, and the appellant is no more responsible for his negligence in driving the car to the garage than it would be for that of any other volunteer who had for the accommodation of the owner driven it there for storage.

The question in this case does not arise from the failure of the servant to obey instructions of the master in the manner of performing the duties of his employment, nor from the servant in the execution of the master's business in the scope of his employment combining therewith some private business of his own, and the rule in such cases announced in Pierce-Fordice Oil Association v. Brading, 212 S. W. 707, is not applicable here.

We think the petition alleged the correct measure of damages, and the exceptions thereto were properly overruled. Cooper v. McKnight, 147 S. W. 349; Railway Co. v. McMeans, 188 S. W. 692.

[2] The statements of the witness Hall made shortly after the collision were not res gestæ and not admissible as original evidence, but, so far as they tended to contradict the testimony of the witness, were admissible for the purpose of impeachment.

For the error indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.