MRS. ANN E. RANKIN ET VIR V. NASH-TEXAS COMPANY ET AL.

No. 6820. Decided May 12, 1937.
(105 S. W., 2d Series, 195.)

*Callaway & Reed, W. C. Scurry* and *Frank C. Brooks,* all of Dallas, for plaintiff in error.

It was error for the trial court to sustain defendant's motion for an instructed verdict at the conclusion of the introduction of plaintiff's evidence, because the negro chauffeur, a general employee of the defendant, was acting in the scope of his employment and in the furtherance of the business of his employer at the time of the accident, since he was driving the car pursuant to directions given him by his employer, over the route given him to take, engaged in bringing Mrs. Rankin back to the garage to pay her bill, as he had been instructed to do, in a car owned by her but upon which the defendant had and claimed a possessory lien. Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. Rep. 252; Linstead v. Chesapeake & Ohio Ry. Co., 276 U. S. 28, 48 Sup. Ct. Rep. 241; Worsham Buick Co. v. Isaacs, 121 Texas 587, 51 S. W. (2d) 277.

*Robertson, Leachman, Payne, Gardere & Lancaster* and *Bromberg, Leftwich, Carrington & Gowan,* all of Dallas, for defendants in error.

It was not error for the trial court to give an instruction for the defendant at the close of plaintiff's testimony, because such evidence showed that she was in her own car going to perform the duty which she owed, namely to pay her bill for repairs, when the accident occurred, there being no evidence that the driver was the servant of the defendant or in the course of his employment for them, and the negligence if any of the driver must be imputed to the plaintiff in her action against the defendant based on the doctrine of respondeat superior. Meyer v. Miller, 50 Pac. (2d) 1018; Jellico Gro. Co. v. Biggs, 68 S. W. (2d) 429; Smith v. Wells, 31 S. W. (2d) 1014.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Plaintiff in error Mrs. Ann E. Rankin, joined by her husband, sued defendants in error Nash-Texas Company and F. L. Euless for damages for personal injuries suffered by Mrs. Rankin when her automobile in which she was riding, driven by a negro chauffeur alleged to be a servant of the Nash-Texas Company, struck another automobile and was struck by a third automobile driven by a stepdaughter of Euless. At the conclusion of the evidence offered by the plaintiff the trial court peremptorily instructed the jury to return a verdict in favor of the defendants and rendered judgment that the plaintiff take nothing, the judgment reciting that in the opinion of the court the driver of the automobile in which the plaintiff was riding was

at the time of the accident plaintiff's agent and not the agent of Nash-Texas Company, and that the evidence offered by plaintiff was not sufficient or competent to show any negligence on the part of the driver of the automobile owned by the defendant Euless. The trial court's judgment was affirmed by the Court of Civil Appeals. 73 S. W. (2d) 680.

It is our opinion, after careful consideration of the evidence, that the trial court erred in peremptorily instructing a verdict for Nash-Texas Company, but did not err in peremptorily instructing a verdict for the defendant Euless.

There was evidence of negligence on the part of the driver of Mrs. Rankin's car and evidence that his negligence proximately caused the injuries. The important question, as is indicated by the recital in the trial court's judgment, is one of master and servant. Who was the master of the chauffeur at the time of the accident?

The facts as offered in evidence by the plaintiff are substantially as follows: Mrs. Rankin, while driving her automobile in Dallas, stopped for a signal light and could not start the automobile. She telephoned Nash-Texas Company and a man came, cranked the car and drove it to the company's garage, where she was told what repairs were necessary and that the repairs could be made in about two hours. She requested the mechanic to send her to her sister's residence about eighteen blocks from the garage and she was taken there in her car driven by a negro chauffeur. She was told at the garage that she would be called by telephone when the automobile was ready. It seems that nothing was said as to where or how the automobile would be delivered to her after completion of the repairs or as to when or where payment would be made for the repairs.

Mrs. Rankin testified that after waiting about two hours she telephoned Nash-Texas Company and was told that she would be called in a few minutes. She waited another hour, telephoned again, and was told that the car was "ready to come" and that "We will send right out for you." When asked what else was said at that time she testified: "I said 'How much is my bill' and the man said '$4.40' and I said 'All right, I will come back with the negro and pay my bill,' and he said 'If we send a car out for you, you will come back with the negro and pay your bill?' and I said 'Yes'." She then answered in the affirmative the following question: "After you had asked how much it was and told him you would come back he then said to you 'If we send out for you, you will come back with the negro and pay your bill?' and you said 'Yes'?"

Mrs. Rankin's automobile was sent out, driven by a negro chauffeur, not the one who had previously driven the car to her sister's residence. When the automobile stopped in front of the residence Mrs. Rankin and her niece entered the back door of the car, which was opened by the chauffeur, and occupied the back seat as the car was driven toward the business district of the city. At a short distance from the place of the collision Mrs. Rankin saw a car backing out from in front of a store building and said to the chauffeur: "Look out, you are going to hit that car." The chauffeur disregarded her warning and neither changed the direction in which he was driving nor reduced the speed of the automobile, and struck another car which had come between Mrs. Rankin's automobile and the car that was backing out from the curb. Almost immediately after Mrs. Rankin's car was stopped by the collision it was struck in the rear by the automobile owned by defendant in error Euless.

On the way from her sister's residence to the place of the accident Mrs. Rankin told the chauffeur he had not closed the door tightly. He paid no attention to her statement. Further on the way she asked him to drive more carefully but he did not change his manner of driving. Except for these two statements and the warning given just before the collision, it does not appear that Mrs. Rankin undertook to direct the chauffeur how or where to drive. After the collision the automobile was taken to the garage of Nash-Texas Company, and the company refused to release it to Mr. Rankin until the charges of $4.40 for the repairs were paid.

The Court of Civil Appeals based its affirmance of the judgment of the trial court in favor of Nash-Texas Company, first upon the conclusion that the evidence shows that the driver of the automobile was the servant of Mrs. Rankin engaged in the performance of her business and under her control and direction, and second upon a theory of common or joint enterprise, expressing the opinion that the best that could be said from Mrs. Rankin's standpoint was that the journey was for her benefit jointly with that of Nash-Texas Company.

1 It is our opinion that the evidence introduced by the plaintiff tends strongly to prove, and is at least sufficient to support a finding, that the chauffeur at the time of the accident was engaged in the work of Nash-Texas Company and was under its control rather than under the control of Mrs. Rankin.

The chauffeur was either a servant in the general employment of Nash-Texas Company or its servant employed for the special purpose of driving Mrs. Rankin's car to her sister's resi-

dence and bringing her to the garage. He was not selected by Mrs. Rankin. The only evidence explanatory of the chauffeur's possession of Mrs. Rankin's car is: The company sent her to her sister's residence in her car driven by a negro chauffeur and promised to telephone her when the car was ready. After she telephoned twice inquiring about the car she was told that the company would send out for her. She asked the amount of her bill and said she would come back with the negro and pay it. A short time thereafter her automobile, driven by a negro chauffeur, appeared at her sister's residence. She got in the car and the accident occurred while the car was driven by the chauffeur from her sister's residence toward the business district of the city. The reasonable inference from this evidence is that the chauffeur was placed by Nash-Texas Company in control of Mrs. Rankin's automobile and by it instructed to drive to the residence of Mrs. Rankin's sister and bring Mrs. Rankin back to the garage.

2 Nash-Texas Company contends that even if it agreed with Mrs. Rankin to bring her back and use one of its servants to do so, its servant was but loaned to Mrs. Rankin for the performance of a particular service for her and was subject to her control. Thus the question is sharply presented whether the company's employee became in the performance of the particular service the servant of Mrs. Rankin or remained the servant of the company. As said in Standard Oil Company v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, 484, to determine this question, "We must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servant in the performance of his work." Justice MOODY states in the opinion that the control here referred to means authoritative direction and control. He further says that to relieve the original employer from the results of the legal relation of master and servant it must appear that the relation has been for a time suspended and a new like relation between a new master and servant created. The rules announced in Standard Oil Company v. Anderson have been quoted and followed in many decisions. Geo. A. Fuller & Company v. McCloskey, 228 U. S. 194, 33 Sup. Ct. 471, 57 L. Ed. 795; Denton v. Yazoo & Mississippi Valley R. R. Co., 284 U. S. 305, 52 Sup. Ct. 141, 76 L. Ed. 310; Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; Dalrymple v. Covey Motor Car Company, 66 Ore. 533, 135 Pac. 91, 48 L. R. A. (N. S.) 424; Ouellette v. Superior Motor & Machine Works, 157 Wis. 531, 147 N. W. 1014, 52 L. R. A. (N. S.) 299; Moss v. Chronicle Publishing Company, 201 Calif. 610,

258 Pac. 88, 55 A. L. R. 1258; Ramsey v. New York Central R. Co., 269 N. Y. 219, 199 N. E. 65, 102 A. L. R. 511.

In the case last cited it is said: "The servant of one master to become, for the time being, the servant of another must pass out of the direction and control of the former into that of the latter." See also: Labatt's Master and Servant, (2d ed.) Sec. 52, Vol. 1, pp. 173-174. The power or right of control is necessary to the existence of the relation of master and servant and the consequent liability of the master for the servant's acts. Associate Justice BONNER, discussing in Cunningham v. International Railroad Co., 51 Texas 503, 32 Am. Rep. 632, the distinction between the liability of the master for the acts of an ordinary servant and that of an employer for the acts of an independent contractor, spoke of "the reasonable principle that in a proper case the liability of the master should be commensurate with the extent only of his right to control." He said further: "The master has the right to direct the conduct of the servant and the mode and manner of his doing the work, and hence his corresponding liability for an improper execution of the same." In Texas Power & Light Company v. Denson, 125 Texas 383, 81 S. W. (2d) 36, the employer was held liable for injuries caused by the negligent driving of an automobile by a local salesman, because he was engaged in doing his master's work and in the course of his employment and was under the complete control of the employer's manager. "As in other cases, the doctrine of respondeat superior, as applied to the operation of automobiles, rests upon the power and control which the person sought to be charged as master has over the alleged employee." 5 Am. Jur., Sec. 374, p. 711.

Considering the power or right of control over the chauffeur who drove Mrs. Rankin's car at the time of the collision, we believe, as has been said, that it is fairly to be inferred from the evidence that the chauffeur was selected or employed by the Nash-Texas Company and by it directed to drive Mrs. Rankin's car to her sister's residence and bring her to the garage. He was performing at the time of the accident the service that the company directed him to perform. There is no evidence that the company instructed or authorized him to put himself under the control or direction of Mrs. Rankin. The conduct of the chauffeur in failing to close the door tighter at Mrs. Rankin's suggestion, in disregarding her request to drive more carefully, and in failing to heed her warning just before the accident indicates that he did not understand that he had been placed under her control. Her action in making such suggestions or requests does not necessarily prove that she had or claimed the right of control. They doubtless sprang

from anxiety for her personal safety. We find nothing in the evidence from which it conclusively appears that the company's servant or employee passed from the control or direction of the company into that of Mrs. Rankin and became her servant.

**3** Mrs. Rankin's presence in the automobile owned by her and driven by the chauffeur at the time of the collision is a fact from which the inference could reasonably and readily be drawn that she had control over the chauffeur and that he was operating the automobile as her servant, but such fact does not conclusively prove her right of control or that the chauffeur had become her servant. These were made by the evidence discussed issues of fact. Buick Automobile Co. v. Weaver, 163 S. W. 594 (application for writ of error refused) ; Janik v. Ford Motor Company, 180 Mich. 557, 147 N. W. 510, 52 L. R. A. (N. S.) 294, Ann. Cas. 1916A, 669; Ouellette v. Superior Motor & Machine Works, 157 Wis. 531, 147 N. W. 1014, 52 L. R. A. (N. S. ) 299; Zeeb v. Bahnmaier, 103 Kan. 599, 176 Pac. 326, 2 A. L. R. 883 and note; Note 80, A. L. R., pp. 285 and following; 5 Am. Jur., Sec. 354, pp. 694-695.

**4** Applying to the evidence the more general test, whose was the work being performed by the chauffeur, we conclude that the evidence tends to prove that he was acting in furtherance of Nash-Texas Company's business. Mrs. Rankin surrendered possession and control over her automobile to Nash-Texas Company with no express agreement as to the place where it would be returned to her and with no agreement as to when or where she would make payment for the repairs. She was taken by the company's employee to her sister's residence at her request, but when the time came for the completion of the business transaction between her and the company, the latter voluntarily offered to send out for her. It is to be observed that the offer was not to send the automobile for delivery to her but it was to send out for her, evidently contemplating that she would be brought back to the garage there to complete the transaction. Following this offer, Mrs. Rankin said she would return with the negro chauffeur and pay her bill, and the company's representative indicated approval of her promise to do so. Thus it appears that, while the company still had possession of her automobile, with the lawful right to retain possession of it until the charges for the repairs were paid (Article 5503, R. C. S. 1925), the parties agreed that the company would send for her and that she would return with the negro chauffeur and pay her bill. Pursuant to this arrangement she was, when the accident occurred, returning to the garage for the com-

pletion of the transaction by paying her bill to the company and obtaining possession of her automobile.

Under the evidence the case is one in which the company undertook to perform a service as a part of the transaction, in connection with the repairing of the automobile, and the chauffeur's service was work done for the company, not a mere favor to Mrs. Rankin. Dalrymple v. Covey Motor Company, 66 Ore. 533, 135 Pac. 91, 48 L. R. A. (N. S.) 424; Reinhardt v. G. W. Tisdale Inc., (N. J.) 133 Atl. 523. The fact that the car was being driven by the company's employee as a part of the entire transaction in which the automobile was placed in the possession of the company and before possession and control of it were surrendered to the owner, distinguishes it from cases (like Marron v. Bohannon, 104 Conn. 467, 133 Atl. 667, 46 A. L. R. 838; Janik v. Ford Motor Company, 180 Mich. 557, 147 N. W. 510, 52 L. R. A. (N. S.) 294, Ann. Cas. 1916A, 669; Andres v. Cox, 223 Mo. App. 1139, 23 S. W. (2d) 1066, and Main Street Garage v. Eganhouse Optical Company, 223 S. W. 316) in which the automobile was being driven at the time of the accident after the completion of the transaction or merely as a personal favor extended to the owner, or by an employee acting without express authority from his employer and outside the scope of his employment.

5   The negligence of the chauffeur can not be imputed to Mrs. Rankin under the joint enterprise doctrine. This, first, because the evidence tends to prove that the chauffeur was under the control of Nash-Texas Company and not under Mrs. Rankin's control. Certainly it can not be said that conclusive proof was made that Mrs. Rankin and Nash-Texas Company had joint control of the operation of the automobile or that she had a right equal to that of the company to control and direct the chauffeur in its operation. See: El Paso Electric Co. v. Leeper, (Com. App.) 60 S. W. (2d) 187; Ford Motor Co. v. Maddin, 124 Texas 131, 76 S. W. (2d) 474. Furthermore, if it is assumed that Mrs. Rankin and Nash-Texas Company were engaged in a joint enterprise, the controversy here is between the parties to the enterprise, and the doctrine may not be invoked to absolve one of such parties from the consequences of his own negligence by imputing it to the other party whom it has injured. See: "Imputed Contributory Negligence," by W. Page Keeton, 13 Texas Law Review, pp. 161, 163, 164; Bushnell v. Bushnell, 103 Conn. 583, 131 Atl. 432, 44 A. L. R. 785.

6   Mrs. Rankin alleged that the driver of the automobile owned by defendant in error Euless was negligent: in driving the

automobile at an excessive and unlawful rate of speed, in failing to keep a proper lookout, in not driving and steering the car so as to avoid striking Mrs. Rankin's car, and in failing to keep the car under such control as would have enabled her to avoid the collision; and that each of such acts of negligence proximately caused her injuries.

Mrs. Rankin testified that the automobile owned by defendant in error Euless struck the rear of her automobile almost immediately after the first collision. The only other evidence offered with reference to the Euless automobile was the testimony of its driver, Mrs. Hendrix, in substance as follows: She was driving down Live Oak Street and had been trailing an automobile directly in front of her, being aware of it for about a block, and she ran into the rear of that automobile after crossing Liberty Street. She did not remember seeing a car in front of the car that she was trailing until after she had passed Liberty Street. Immediately before the collision she saw a car that backed out into the path of the car that was in front of the car she was trailing. There is no evidence in this testimony tending to prove any of the alleged several acts of negligence on the part of Mrs. Hendrix. Her failure before passing Liberty Street to see, or her failure to remember that she saw, an automobile in front of Mrs. Rankin's automobile is not evidence of failure to keep a proper lookout. The occurrence of an accident, or a collision, is not of itself evidence of negligence. Davis v. Castile, (Com. App.) 257 S. W. 870; Phillips v. Citizens National Bank, (Com. App.) 15 S. W. (2d) 550.

Even if the rule of res ipsa loquitor is applicable to the facts, a question that we need not decide, plaintiff in error can not invoke it against defendant in error Euless, because in her petition she alleged specific acts of negligence as the cause of the collision and failed to incorporate in her petition allegations advising Euless that the rule of res ipsa loquitor would be invoked or that she did not intend to be restricted to the specific allegations of negligence. Wichita Falls Traction Co. v. Elliott, 125 Texas 248, 263, 81 S. W. (2d) 659.

The Court of Civil Appeals did not err in overruling the motions to dismiss the appeal and to strike the statement of facts. 58 S. W. (2d) 902.

The judgments of the district court and of the Court of Civil Appeals in favor of defendant in error Euless are affirmed; and the judgments of said courts in favor of defendant in error Nash-Texas Company are reversed and the cause, as

between plaintiffs in error and Nash-Texas Company, is remanded to the district court.

Opinion adopted by the Supreme Court May 12, 1937.