## PRYOR v. LE SAGE.
### No. 13959.

Court of Civil Appeals of Texas.
Fort Worth.
Oct. 6, 1939.

Rehearing Denied Nov. 24, 1939.

Napier & Napier and E. W. Napier, Jr., all of Wichita Falls, for appellant.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for appellee.

SPEER, Justice.

H. M. Pryor sued R. S. LeSage, doing business under the firm name of LeSage Motor Company, for damages sustained while riding in an automobile with A. A. Rollins, an agent of LeSage, under conditions which we shall later mention.

Plaintiff, Pryor, alleged, among other things, that defendant, LeSage, was at all times involved in this transaction engaged at Wichita Falls, Texas, in the sale and exchange of automobiles and that A. A. Rollins was a sales agent for defendant. That on about August 14th, 1936, plaintiff was endeavoring to negotiate a trade with the defendant for a truck; that in furtherance of the proposed deal, Rollins, the agent of defendant, took plaintiff to Mineral Wells in an automobile belonging to his principal; that while on

said trip, plaintiff was seriously injured in a collision, occasioned by the negligence of Rollins. The acts of negligence alleged consisted of driving over the highway at a high rate of speed, in excess of that permitted by law, failing to observe the road and traffic thereon ahead, failing to keep a proper lookout, turning the car to the right and off the pavement immediately prior to the collision and in driving the car at the time and in the manner mentioned without adequate brakes. All of which acts were alleged to be negligence proximately causing Rollins to drive the automobile into a truck parked by the side of the road in the night time; that in said collision Rollins was killed and plaintiff sustained serious injuries, fully described in the pleadings.

The first paragraph of defendant's trial pleading reads in part as follows: "Now comes the defendant, R. S. LeSage, doing business under the firm name of LeSage Motor Company, in the above entitled cause * * *", and demurs generally to plaintiff's petition. The general demurrer is followed by special exceptions not urged upon the trial. Answer was by general denial, a special answer that plaintiff and Rollins were engaged in a joint enterprise at the time plaintiff claims to have been injured; that the collision was without fault on the part of defendant, but because of the wrongful acts of a third party who parked his car on the pavement of the highway, which said acts were the efficient and intervening cause of the collision; alternatively, that plaintiff was a gratuitous guest while riding in the car with Rollins; defendant further alternatively answered that plaintiff, being a gratuitous guest in Rollins' car, failed to keep a proper lookout for his own safety; that if it be true, as alleged by plaintiff, that Rollins was driving at an unlawful and dangerous rate of speed, plaintiff was negligent in failing to make an effort to prevent said acts, and that plaintiff was further guilty of contributory negligence in failing to ascertain before the accident that the brakes on Rollins' car were defective, if in fact this was true.

The case was tried to a jury on special issues. The answers of all issues, save number 19, were favorable to plaintiff. No. 19 was to the effect that plaintiff and Rollins were engaged in a joint enterprise when the former was injured. Plaintiff moved that Special Issue 19 and its an-

swer be set aside by the court, and that judgment then be entered in his favor on the verdict; defendant moved for judgment; the court overruled plaintiff's motion and sustained that of defendant, and entered judgment accordingly.

Plaintiff moved for new trial, and in his motion devoted nine separate paragraphs to a complaint in one form or another of the action of the court in overruling his motion to set aside Special Issue 19 and its answer and to render judgment in his favor. Motion for new trial being overruled, plaintiff has appealed.

■ Defendant (the appellee) contends that plaintiff's assignments of error should not be considered by us, because they nowhere point out as error the action of the trial court in refusing to set aside special issue 19 and its answer, and further, because the propositions contained in the brief are not based upon the action of the court in refusing to sustain plaintiff's motion. Insofar as defendant's objections apply to the propositions in the brief, he is correct; but plaintiff's tenth assignment, among other things, does assign as error the action of the court in refusing to sustain his motion to set aside Special Issue 19 and its answer. Our amended statute, Article 1757 Vernon's Tex.Civil Statutes, does not require that the brief shall contain propositions under the assignments relied upon. We have repeatedly said that in our judgment such are helpful to the appellate courts, and that we welcome them in briefs, yet we are not at liberty to condemn a brief because of their absence, nor because they are so framed as not to be helpful to the court.

We find in plaintiff's brief ten assignments of error, one of which is as above indicated. They are all referable, either directly or remotely, to the failure of the trial court to sustain his motion to set aside issue 19 and its answer. The purported assignments of error correspond sufficiently with different paragraphs contained in his motion for new trial; however, none of them refers to that part of the motion where the question was raised. They are reconstructed expressions found in the motion.

■ It has been held by our courts that an assignment of error need not be in the precise language of the motion for new trial, but may be reconstructed from the

motion. Moore v. Scott, Tex.Civ.App., 16. S.W.2d 1100, writ dismissed; Pennebaker v. Atwood, Tex.Civ.App., 19 S.W.2d 363, writ dismissed. In Schlofman v. Bear Canon Coal Co., Tex.Civ.App., 77 S.W.2d 337, the Amarillo Court of Appeals held that it was not necessary that assignments of error be either a verbatim or even a substantial copy of those contained in the motion for new trial. It would appear that our courts look to the substance of an assignment, rather than to the form in which it is expressed.

Our Supreme Court, in construing the rules of procedure on appeals, has laid down a rather generous and liberal rule, to insure to litigants their day in court. Gavin v. Webb, 128 Tex. 625, 101 S.W.2d 217, criticising the holding in Id., Tex. Civ.App., 99 S.W.2d 372. We, too, are here inclined to follow the principles there announced and consider the assignments over the objections of defendant.

We think it not difficult for an appellant to substantially comply with the provisions of Article 1844, Vernon's Texas Civil Statutes. It is there said that an appellant "may embody in his brief in the appellate court all assignments of error distinctly specifying. the grounds on which he relies. All errors not distinctly specified are waived, but an assignment shall be sufficient which directs the attention of the Court to the error complained of." No doubt it is the last above quoted expression which has brought about the rule announced.

The sole question before us for determination is whether or not there was any evidence in the case to warrant the submission of Special Issue 19 and to support the answer of the jury thereto.

The court's definition of joint enterprise and Special Issue 19 read as follows:

"Wherever 'joint enterprise' is used in this charge, it is defined to mean that wherever occupants of a conveyance are supposed to be on a joint expedition where they have not only joint interest in the object and purpose of the enterprise, but also have equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance."

"Special Issue No. 19. Do you find from a preponderance of the evidence that the plaintiff, H. M. Pryor, and A. A. Rollins were engaged in a joint enterprise during (the) trip in question? Answer yes or no."

Answered: "They were engaged in a joint enterprise."

The definition of "joint enterprise", as given by the court, is somewhat confusing, if not ambiguous, occasioned by its phraseology. Beginning with the word "occupants" in the definition, it is a verbatim copy of a definition of joint enterprise, approved by the Commission of Appeals, in El Paso Electric Co. v. Leeper, 60 S.W.2d 187, 189. Assuming that no error was made in copying it into the transcript, it is clear that the court intended to convey the idea that there were two essential elements necessary to be shown to constitute a joint enterprise between the participating parties. They must have a joint interest in the object and purpose of the enterprise and when a vehicle or conveyance is used by them, as in this case, both of the parties must "also [have] an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance."

It was Special Issue 19 and its answer which prompted the trial court to enter judgment for defendant, even though all other issues were answered favorable to plaintiff. If.all facts are found from competent testimony to constitute the transaction here a joint enterprise between plaintiff and Rollins, as contained in the issue, then the plaintiff could not recover, for the reason the negligence of the driver of the car proximately causing the injury would be imputed to plaintiff; hence his own negligence thus imputed to him would preclude a recovery against defendant. Waggoner v. Simmons, Tex.Civ.App., 117 S.W.2d 553.

In El Paso Electric Co. v. Leeper, supra, the court quoted with approval the rule laid down in 45 C.J., para. 574, page 1020, in this language: "Where persons are engaged in a common or joint enterprise and each has an equal right to direct and control the conduct of the others with respect to acts or omissions which contributed to cause an injury to one of them, the negligence of one of such persons is imputed to each of the others." See also Rankin et al. v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195; Lockey et al. v. Packard-Dallas Inc., Tex. Civ.App., 119 S.W.2d 150, writ dismissed.

The record discloses that at about the time this controversy arose, R. S. LeSage was operating an automobile business at Wichita Falls and other places in the State, in the trade or firm name of LeSage Motor Company. At the Wichita Falls place of business, Ray Bryan was defendant's mana-

ger, Mr. Vinson was the credit manager, Homer Quinn was the used car manager and appraiser, and A. A. Rollins and V. R. Akins were salesmen on commissions.

Plaintiff was desirous of trading for a truck with which he could get employment. He owned a 1936 two-door Ford, upon which he owed some money. He made a tentative trade to exchange his equity in the Ford to one Keathly for the latter's 1932 Chevrolet truck, clear of debt. Plaintiff was to allow Keathly for his truck in the trade as much as he could get from defendant for it, in exchange for a 1934 Chevrolet dump truck. Plaintiff drove the Keathly truck to defendant's place of business at Wichita Falls and approached salesman A. A. Rollins, whom he knew, and the two discussed a trade. Plaintiff expected to pay some difference in the exchange and would need to arrange that indebtedness with defendant. The Keathly truck (then in plaintiff's possession) was appraised by defendant's appraiser, Quinn. The credit part of the deal was passed upon by defendant's agent, Mr. Vinson. He ascertained that plaintiff had not as yet procured a bill of sale and title papers to the truck, and moreover, that there was an outstanding lien against it.

In furtherance of the proposed deal, Vinson told plaintiff and Rollins there was only one way to do it, and that was for plaintiff and Rollins to go see Keathly and get a bill of sale to plaintiff and a disposition of the debt against the truck. Rollins said to plaintiff, "Let's go." Plaintiff and Rollins then left to find Keathly; plaintiff drove the Keathly truck, and Rollins followed in one of defendant's cars. About fifteen miles from Wichita Falls, at a point in Archer County, plaintiff stopped at the home of his father-in-law, left the Keathly truck and got in the car with Rollins, and the two proceeded to the home of Keathly, at Mineral Wells, where plaintiff procured from Keathly the bill of sale to the truck, with instructions not to deliver it until he turned the truck to the proposed purchaser. Rollins and Keathly discussed the trade in plaintiff's presence. Plaintiff and Rollins left Mineral Wells at about 7:30 in the evening to return to Wichita Falls. From Mineral Wells to the Fort Worth and Jacksboro highway the road is crooked and narrow, and Rollins drove at a rather slow rate of speed, but when he reached the highway he increased his speed until at one point he was shown to have been making

from 80 to 85 miles per hour. Plaintiff asked him to reduce his speed, because there was an overpass ahead. Rollins replied, "You are scared tonight." Plaintiff admitted that he was when that overpass was ahead to be crossed. At a point on the highway, about which the testimony is conflicting, but the place is not material here, there was a cattle truck standing upon or adjacent to the pavement and the car in which plaintiff and Rollins were traveling collided with it, resulting in the death of Rollins and severe injuries to plaintiff.

The mission upon which plaintiff and Rollins went was for the purpose of arranging the details of the proposed trade of cars between plaintiff and defendant. If the trade should be consummated, it is fair to assume that each, plaintiff, Rollins and defendant, would profit thereby. The errand was mutually beneficial to all, and that was one element necessary to make it a joint enterprise. But it is contended by plaintiff (appellant here) that the further element, that "they must have equal rights, express or implied, to direct and control the conduct of each other in the operation of the conveyance," is not shown by any testimony whatever. Before it can be said that plaintiff was injured while engaged in a joint enterprise, each of these elements must be shown by at least some evidence of probative force. We think there is no evidence in the record to support the answer to the issue, when taken in connection with the definition given.

The evidence shows that Vinson, the credit manager of defendant, told them both to go and see Keathly. The necessity for plaintiff to go is explained by the testimony that plaintiff had not yet procured a bill of sale to the Keathly car, and further because Rollins did not know where to find Keathly, and plaintiff did. There is nothing in the record to indicate that Vinson expected them both to go in the car furnished by defendant to Rollins. In fact, plaintiff had the Keathly car on the ground and left Wichita Falls in it, and Rollins left in defendant's car. Insofar as defendant is concerned, acting through his agent, Vinson, the car was furnished to Rollins, another agent of defendant, and not jointly to the two. The only disclosed fact in the testimony that could possibly be construed to mean that plaintiff had or attempted to exercise any control over the car or the acts of Rollins in its operation, was plaintiff's protest to Rollins that he was driving

too fast and his request to reduce his speed. We do not think this fact tends to show plaintiff's right or attempt to control the operation of the car in which they were riding, other than for the protection of them both against the inevitable results of Rollins' fast driving.

In a somewhat similar situation to that above shown, in Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195, where the issue was before the court as to whether or not Mrs. Rankin was exercising control over the acts of the driver of her own car, which was in the possession of defendant and was sent by one of its employees to bring Mrs. Rankin to its place of business to pay her bill and procure possession of her car. On the way to defendant's place of business, Mrs. Rankin complained to the driver on account of his recklessness and insisted that he be more careful. Subsequent to her warning an accident happened and she was injured. The court said, 129 Tex. 396, 105 S.W.2d at page 198: "Her action in making such suggestions or requests [to the driver] does not necessarily prove that she had or claimed the right of control. They doubtless sprang from anxiety for her personal safety."

■■ It is only when there are pleadings and evidence to support an issue that it should be submitted to the jury. Article 2190, Vernon's Texas Civil Statutes. If, however, an issue is submitted under the belief by the court that there was evidence to support it and he becomes subsequently convinced that there was no evidence in support of it, and his attention is called to it upon motion for new trial, it becomes his duty to set aside the issue and its answer and thereafter to disregard them in entering judgment. The trial court should have sustained plaintiff's motion in this respect, and for his error in failing to do so we must sustain the assignment of error and reverse the cause for another trial.

Although the verdict of the jury, aside from Special Issue 19, is for plaintiff, we are not rendering this cause, for the reason that upon the trial below defendant objected to each and every issue submitted, for various and sundry reasons; but having eventually received a favorable judgment, he has had no opportunity upon this appeal to present his contentions there expressed. To here render a judgment would do violence to his complaints which would form the basis for assignments of error had he been cast in the action.

For the reasons shown, the judgment of the trial court is reversed and the cause remanded.

## On Motion for Rehearing

Both parties have filed lengthy and somewhat persuasive motions for rehearing in this case. The plaintiff, Pryor, based upon the next to the last paragraph of our original opinion, insists that the cause should not be remanded for another trial, but since defendant, LeSage, had not filed cross assignments of error complaining of the rulings of the court which resulted in a favorable jury finding for plaintiff, they had been waived. There are good authorities for the contention. But the language used by us was occasioned by an oversight on our part, and was improvidently done.

The language used, to which we have referred, is as follows:

"Although the verdict of the jury, aside from Special Issue 19, is for plaintiff, we are not rendering this cause, for the reason that upon the trial below defendant objected to every issue submitted, for various and sundry reasons; but having received a favorable judgment, he has had no opportunity upon this appeal to present his contentions there expressed. To here render a judgment would do violence to his complaints which would form the basis for assignments of error had he been cast in the action."

■ As stated, we were in error in the quoted paragraph, and we now withdraw the same from the opinion. As a matter of fact, defendant did present in his brief seven cross-assignments of error, saving the points raised, perhaps to meet the very condition that has arisen. It would be more accurate to here say that because of defendant's objections and exceptions to the charge and other rulings of the court presented by the cross-assignments, we feel impelled to reverse and remand the cause, rather than render judgment for plaintiff. The following authorities support our acts in so doing: Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178; Colbert v. Dallas Joint Stock Land Bank of Dallas, 129 Tex. 235, 102 S.W.2d 1031; Sun Oil Co. v. Gunter et al., Tex.Civ.App., 125 S.W. 2d 338–340.

Defendant insists that we were wrong in holding that there was no substantial evidence adduced to support the jury verdict in answer to Special Issue 19. He offers many authorities which discuss as many

different phases and conditions involved in the doctrine of joint enterprises. We have indicated in the original opinion that the trial court applied the test of the elements entering into that relationship that was approved in El Paso Electric Co. v. Leeper, Tex.Com.App., 60 S.W.2d 187. The facts in the Leeper case were similar in many respects to those under consideration by us. We feel that we have correctly disposed of this case. There are many expressions found in defendant's motion, in which it is contended that we have held contrary to the undisputed facts developed upon the trial. We do not feel that any worthwhile purpose could be served by further writing at length in an effort to refute such statements. We are sure that none of them were made with any other purpose in view than to express the party's conception of what is contained in the record. We believe that the ends of justice, as applicable to all parties, will be best subserved by the disposition made by us of this appeal. Both motions are therefore overruled.