**Russell LOVELL et al., Appellants,**

**v.**

**Mrs. Jessie M. STANFORD et al., Appellees.**

**No. 11156.**

Court of Civil Appeals of Texas.

Austin.

March 18, 1964.

Rehearing Denied April 15, 1964.

Talbert, Giessel, Cutherell & Barnett,
Don Weitinger, Hicks, Dollahon & Wohlt,
Houston, for appellants.

Hill, Brown, Kronzer, Abraham, Watkins & Steely, Freeman Bullock, Houston, for appellees.

HUGHES, Justice.

This suit is for damages for personal injuries sustained by Mrs. Jessie Stanford and Mrs. Ida Armstrong as the result of a collision involving three passenger automobiles on the Gulf Freeway in Harris County on April 4, 1960. Mrs. Stanford was driving the lead car and Mrs. Armstrong was riding with her as a passenger and occupied the right rear seat. The first following car was operated by appellant Gilbert M. Marcus. The third car in line was operated by appellant Russell Lovell. Appellees did not plead any specific acts of negligence but the evidence discloses that the primary acts of negligence are that appellants failed to keep a proper lookout and that they were following the preceding car too closely. The Stanford car stopped, the Marcus car lightly hit the Stanford car and the Lovell car hit the Marcus car, which was propelled, with considerable force, into the Stanford car.[1] Trial was to a jury, however, the Court submitted damage issues only to the jury and refused to submit various issues requested by appellants. Judgment was entered on the jury verdict for the amount of damages found.

Appellants have filed separate briefs. Their first two points are identical. They are that the Court erred in holding them negligent as a matter of law and in resolving the proximate cause requisite against them as a matter of law. We will make a factual or evidentiary statement applicable to both appellants.

The only witnesses to these collisions who testified are parties to this suit, and except for the interest of such witnesses, most of the evidence is undisputed. We will particularly note the areas of dispute.

The collisions occurred about 5 p. m. The weather was clear and sunny. There was no need for cars to use lights. Mrs. Stanford was driving on the Gulf Freeway towards Houston. Mrs. Ida Armstrong rode with her as a passenger on the right rear seat, and were the car's only occupants. The Gulf Freeway, at the situs of the wreck, consisted of six traffic lanes, three each way being divided by an esplanade. We will now recite the relevant facts as testified to by Mrs. Stanford.

The car Mrs. Stanford was driving was in good mechanical condition, lights, brakes, etc. She was driving in the outside or right hand lane, preparing to exit from the Freeway. She was required to stop because of traffic in this lane. Such traffic had become congested because of a wreck off the Freeway on the lateral road. She came to a slow gradual stop and gave notice of her intention to stop by hand signal and by activating her stop lights by pressure on the brakes. She stopped about six feet behind the stopped car preceding her. A few seconds after stopping, the Stanford car was struck by the following car (Marcus). A few seconds later the Stanford car was struck again by the Marcus car which impact was caused by the Marcus car being struck by the Lovell car. All three cars were in the same right hand lane. The second impact sustained by the Stanford car was greater than the first impact.

Mrs. Armstrong testified that she agreed with Mrs. Stanford as to the manner in which these collisions occurred.

We will now recite the version of the accident as testified to by Mr. Marcus.

Mr. Marcus was the only occupant of his car. The car was in good mechanical condition. The traffic on the Gulf Freeway was congested. He was driving, as was the traffic in general, between thirty-five and forty-five miles an hour. Mr. Marcus noticed that the traffic in the outside lane in which he was traveling was "stacking up"

---

1. As will be noticed, infra, Lovell disputes the last factual statement.

and he· considered changing to the center lane. We quote his testimony:

"Q And you noticed that the middle lane might be clear for you to avoid this stacking up?

A I looked through my rear view mirror momentarily.

Q The facts are you saw the traffic up ahead of you that was slowing down and stacking up, and you saw Mrs. Stanford beginning to slow down?

A I don't remember seeing her slow down, but I noticed the traffic slowing down up ahead of her.

Q And that is why you looked in your rear view mirror in an attempt to pass around her?

A Yes, sir.

Q It was your intent when you saw this traffic stacking up ahead of you in the right-hand lane, to try to avoid it by getting in the lane to your left?

A Yes, sir.

Q As you looked in your rear view mirror was the traffic clear behind you?

A I don't remember what I saw.

Q You did attempt to turn to your left?

A No, sir, I don't believe I started to turn.

Q But after you looked in your rear view mirror to see if the traffic was clear, that is when you saw her stop?

A I looked back and I was gaining quickly upon her.

Q And then you put on your brakes?

A Yes, sir.

Q About how fast were you traveling when you applied your brakes?

A When I applied my brakes, I believe I was in the vicinity of 35 miles an hour.

Q There is testimony here that your car made some contact with the Stanford car before you were struck from the rear, do you agree to that?

A Yes, sir.

Q You did make some contact with the Stanford car and some time later you were struck from the rear?

A Yes, sir.

Q Do you agree there were two separate impacts?

A Yes, sir.

Q And in your opinion the second impact was greater than the first impact?

A I believe it was.

  *    *    *

Q Mr. Marcus, there was nothing to obstruct your vision as you drove along the freeway, was there?

A No, sir.

Q There were no cars moving in and out between you and the line of traffic Mrs. Stanford was in immediately before the collision?

A No, sir, not immediately.

Q There wasn't any sun there in your eyes as you were proceeding toward town?

A If there was, it was not bothering my driving.

  *    *    *

Q What distance did you maintain between the front of your vehicle and the back on her [Stanford]

vehicle as you were going down the roadway at 40 miles an hour?

A  I would say we had between 50 and 60 feet.

\* \* \*

Q  As you were traveling at such a distance and at such a speed, under these very conditions, you observed the traffic ahead of Mrs. Stanford slowing, and you glanced in your rear view mirror to see if you could go to the left-hand lane?

A  Yes, sir.

Q  Approximately how long did that take you?

A  A quarter of a second.

Q  And then turning your eyes back would be about the same?

A  The whole action could be taken in less than three-quarters of a second.

Q  And then when you glanced back to the traffic in front of you, that is when you observed for the first time that the vehicle immediately ahead of you was slowing?

A  Yes, sir.

Q  Having glanced away from it and then glanced back at it, did that make it appear to you as if that vehicle was slowing rather rapidly at that time?

A  Yes, sir.

Q  You had not observed it slowing before you glanced away, and when you glanced back, that gave you the illusion of it slowing rather at a rapid rate?

A  I don't think it was an illusion, my impression was that the vehicle was slowing down at a rapid rate.

Q  Let's say that looking away from the vehicle and then looking back, took no more than three-quarters

of a second, and you were going 40 miles an hour, and I am using low figures, during that three-quarters of a second your vehicle would have traveled some 70 feet forward?

A  It is actually less than that, it is between 50 and 60 feet.

Q  You were following her at a distance of about 40 feet?

A  Yes, sir.

Q  When realized after looking back at the vehicle ahead of you that it was coming to an abrupt stop, did you know you were called upon to act or do something?

A  Yes, sir.

Q  Did you make an immediate application of your brakes?

A  Yes, sir.

Q  A hard brake application?

A  Yes, sir.

Q  Would it be fair to characterize it as an emergency, panic application of the brakes?

A  Yes, sir.

Q  And when you hit your brakes for that emergency stop, it did slow your vehicle very rapidly?

A  Yes, sir.

Q  And it did cause the brakes on your vehicle to go on?

A  Yes, sir.

Q  Before looking away from the vehicle ahead of you and then looking back at it three-quarters of a second later, had you ever observed that vehicle ahead of you was giving you a hand signal or other signal that it was stopping?

A  No, sir.

Q Did the brake lights go on?

A No, sir.

Q Had you observed them, you would have made a more slower and gradual stop?

A Yes, sir.

Q So your failure to see that hand signal or brake signal before you looked away from the roadway, would account for your having to make an emergency stop when you did observe it?

A Yes, sir.

Q You are telling us that the average time for a person upon observing the danger until something is done is something like a second?

A Yes, sir.

Q Of course, the beginning of that time for you, perhaps, would be when you looked back at the vehicle and observed it was slowing at that time?

A Yes, sir.

Q And one second later would be when your brakes actually took hold?

A For the average person.

Q And that would be also the time when your brake lights came on on the back of your vehicle?

A Yes, sir.

Q It would come on at the end of that one second?

A Yes, sir.

Q So the driver behind you would have one second less to stop to avoid an accident than you would have?

A Yes, sir.

Q And that one second is significant, because it would give him some-

thing like 50 or 60 feet less than you had?

A Yes, sir.

Q I take it, when you made this emergency application of your brakes, you did so as rapidly as you could?

A Yes, sir.

\* \* \*

Q At the time of the impact between your automobile and Mrs. Stanford's automobile, the first contact, could you estimate whether or not you had brought your car to a complete stop, or, what are the facts as to how fast you were going at that time?

A Mrs. Stanford and I were at a complete stop with the cars bumper to bumper.

Q And were you in that position when the rear of your car was struck by Mr. Lovell?

A Yes, sir.

\* \* \*

Q About how long a space of time would you estimate transpired between the time you made the original contact with Mrs. Stanford's car before your car was hit from the rear and driven into her car the second time?

A Less than three seconds."

Mr. Lovell testified that his car was in good working order; that he was driving about thirty-five miles an hour; that he followed the preceding [Marcus] car at an interval of about three car lengths. He had previously testified by deposition that this distance was about two car lengths or about 35 feet. We now quote from his testimony:

"Q What was the first knowledge you had that the Marcus car was stopping?

A When his brake lights went on and when the first impact took place.

Q Speaking of the first impact, this is the impact you referred to, the impact between the Marcus car and the Stanford car?

A Yes, sir.

Q Did you hear that impact?

A I heard the screeching of tires and the impact.

Q The actual physical sound of the impact?

A Yes, sir.

* * *

Q I am asking you now, Mr. Lovell, this screeching of the brakes and you heard the impact, were they about the same time?

A I would say they were simultaneously.

* * *

Q When you saw Mr. Marcus' tail light go on, what did you do?

A I threw on my brakes.

Q Immediately?

A Yes, sir.

* * *

Q Did the front of your car strike the rear of the Marcus car?

A Yes, sir.

Q That was a Chrysler?

A Yes, sir.

Q Was the Chrysler then knocked into the Stanford vehicle?

A No, sir.

* * *

Q About how fast were you going when you applied your brakes?

A I believe I was going between 30 and 40 miles an hour, I will say 35 probably.

* * *

Q And with regards to the Marcus vehicle, was it stopped or moving at the time you struck it?

A When I struck it?

Q Yes.

A Let me think. I believe it was moving slightly. I believe the first impact, when he hit the car in front of him it had slowed him down to almost a stop.

* * *

Q I believe it is your estimate you were traveling 30 to 40 miles an hour, perhaps 35 miles an hour, when you made application of your brakes?

A That is right.

Q How far do you think you were behind Mr. Marcus' car when you made application of your brakes?

A By the time he made his application, I wasn't very far.

Q About how far do you estimate you were when you made your application?

A Probably 10 feet."

As will be noted, the principal conflicts in the testimony of these witnesses are (a) Mrs. Stanford said she came to a slow gradual stop after giving hand and light signals, whereas, Mr. Marcus said he saw no signals and her stop was "rapid" (b) Mr. Lovell testified that the Marcus car was moving when he struck it and that it, the Marcus car, was not propelled into the Stanford car by such action, whereas, both Mrs. Stanford and Mr. Marcus testified to the contrary.

Appellants cite us to cases such as Rankin v. Nash-Texas Company, 129 Tex. 396, 105 S.W.2d 195, for the holding that, "The occurrence of an accident, or a collision, is not of itself evidence of negligence." This, of course, means that a

collision in a void, divorced of surrounding circumstances, is not evidence of negligence. It could not mean that a collision occurring between cars traveling in opposite directions on a one way street is no evidence that the car traveling in the wrong direction was not negligent. Negligence and proximate cause may be inferred from the circumstances. Renshaw v. Countess, Tex.Civ.App., 289 S.W.2d 621, Fort Worth Civ.App., no writ. 7 Tex.Jur.2d, Automobiles, Sec. 149, p. 495. The circumstances attending a collision may be so strong that, unexplained, the inference of negligence and proximate cause to be drawn from them is one about which reasonable minds could not differ and, hence, is one of law. See Hoey v. Solt, 236 S.W.2d 244, San Antonio Civ.App., no writ. In this case the Court, speaking through now Supreme Court Justice Norvell, stated:

"Solt also testified that there was nothing ahead of him to prevent his seeing the Hoey car, which was stopped in front of him waiting on the light; that the car of the third driver on his right hand had proceeded along in a northerly direction to the right and approximately parallel to his car for a block or block and a half; that he could have slowed down so as to let this car get ahead of him, had he so desired, but that he drove along looking at this other car and ran into the back of the Hoey automobile.

"It is accurately stated in defendant's brief that 'the plaintiffs take the position that since the evidence was undisputed to the effect that the defendant ran "smack-dab" into the back end of plaintiff's car at a time when it was stopped at a stop signal, that the defendant is negligent as a matter of law, and further that such negligence was the proximate cause as a matter of law. This contention by them is made in accordance with a general rule of "lookout" which they cite, and which they substantiate with authorities, to the effect that the failure to maintain a

lookout for vehicles ahead is negligence per se, and that a collision with a vehicle standing in open view ahead is as a matter of law proximately caused by such negligence. We have no dispute with this general rule; but such rule, under the authorities, must be qualified with the proviso: "provided the acting party's attention has not been diverted therefrom by circumstances which would distract the attention of an ordinarily prudent person under the same situation."

"The actual question now before this Court, and the question which was before the jury and the trial court, is whether a person of ordinary prudence under the same or similar circumstances to that of the defendant would have looked at the car crowding him from the right, and while so doing would have failed to observe the car in front of him.'

"[1] If reasonable minds can differ as to the inferences and conclusions to be drawn from the undisputed evidence, then the case is one for the jury. If reasonable minds can not differ, then an issue of law is presented.

"[2] It can not be gainsaid that one who fails to stop his automobile in response to a traffic signal, but propels the same into the rear end of an automobile which has stopped in obedience to the signal, is guilty of negligence proximately causing injury or damage unless such conduct is excused by some extenuating circumstance or condition. Defendant contends here that his conduct was excusable by reason of the actions of the third driver.

\*    \*    \*    \*    \*    \*

"The evidence in this case suggests nothing in the way of a sudden emergency. The car of the third driver travelled along to the defendant's right for at least one block. Automobile drivers on city streets must for their own safety necessarily notice cars which

drive alongside them, but this circumstance cannot excuse them from failing to heed traffic lights and see vehicles immediately ahead of them."

The Court reversed and rendered judgment for the plaintiff even though the jury had failed to find defendant negligent.

See also Fister v. Jackson, Tex.Civ.App., 276 S.W.2d 910, by the same Court. No writ.

The facts here, in our opinion, parallel those in Hoey with sufficient similarity to make that decision applicable here.

■ The negligence of Mr. Lovell is transparent. It is not clouded by any fact or circumstance. Mr. Lovell was simply following the Marcus car too closely for the speed at which he was traveling. He was driving at 35 miles per hour about three car lengths behind the Marcus car. He saw the brake lights of the Marcus car go on. He applied his brakes when about 10 feet from such car. He struck the stopped Marcus car when traveling about 15 miles per hour. Mr. Lovell stated, "If I had had about three more feet to go, I wouldn't even have hit Mr. Marcus." The reason, and the only reason, Mr. Lovell did not have three more feet to go is that he was following the Marcus car too closely. There simply is no other explanation for the Lovell car striking the Marcus car. The road and weather conditions and mechanical conditions of the car were perfect. There were no distractions present. The reaction of Mr. Lovell was normal when the necessity for stopping appeared. He was just unable to stop his car within the distance of 10 feet which he had allowed himself. We agree with the Trial Court that Mr. Lovell was negligent as a matter of law.

The situation as to Mr. Marcus is also devoid of extenuating circumstances. The evidence of his negligence is stronger, if possible, than the evidence proving negligence of Mr. Lovell. Mr. Marcus saw the traffic in front of him slowing down.

He was alerted by this fact to the inconvenience it would cause him and thought about changing lanes, but he was apparently not alerted to the danger it presented. At any rate he ignored this danger, thus necessitating a sudden stop.

■ We do not consider the testimony of Mr. Marcus that the deceleration of the Stanford was "rapid" or that he did not see hand or light signals from the Stanford car to be significant. There was nothing to prevent Mr. Marcus seeing the Stanford car with or without signals emanating from it. The car was there big as life. He could not prudently ignore its presence. Mr. Marcus did not keep a proper lookout or he would have seen the Stanford car slowing down as well as the traffic in front of the Stanford car slowing down. It is not reasonable that he should have observed the slowing of distant traffic, and not have observed similar motion by the car immediately in front of him. When a single line of traffic slows its speed, all cars in line must correspondingly diminish their speed. Those which do not, collide with the car in front. The Marcus car was out of step. Its driver was, in our opinion, guilty of negligence as a matter of law in following too closely and in failing to keep a proper lookout.

■ On the issue of proximate cause, we are of the opinion that the negligence of appellants was, as a matter of law, the proximate cause of the injuries, and resultant damages, sustained by appellees.

Mr. Lovell testified: "Is it your testimony that when you hit Mr. Marcus' car you didn't drive it into the Stanford car. A. No sir, I don't think so."

This testimony is in flat contradiction to the testimony of the other three eye witnesses who were in a better position to know the truth than Mr. Lovell who did not take time to go to the front of the Marcus car or to inquire of the occupants of the Stanford car concerning their injuries. He, Mr. Lovell, left the scene, unidentified and

unconcerned about the consequences of his negligence. His, "I don't think so" is a mere scintilla of evidence insufficient to raise an issue on this question.

The record discloses that the impact between the Marcus and Stanford cars caused by the Lovell car hitting the Marcus car was much greater than the first impact between the Marcus and Stanford cars and that the second impact was responsible for the principal injuries sustained by Mrs. Stanford and Mrs. Armstrong. The damages arising from these injuries were adjudged against both appellants, jointly and severally; they were not apportioned. Appellants complain that this is improper. We disagree. The rule applicable is stated in Texas Power and Light Co. v. Stone, 84 S.W.2d 738, Eastland Civ.App., writ ref., as follows:

"'When an injury occurs through the concurrent negligence of two persons, and would not have happened in the absence of either, the negligence of both is the proximate cause of the accident, and both are answerable.' Id. § 16, p. 129.

\* \* \* \* \* \*

'"If an accident occurs from two causes, both due to the negligence of different persons, but together the efficient cause, then all the persons whose acts contributed to the accident are liable for an injury resulting, and the negligence of one furnishes no excuse for the negligence of the other."' 30 Tex.Jur. § 105, p. 776."

See 40 Tex.Jur.2d, Negligence Secs. 23 and 50, pages 481 and 521.

Mr. Marcus testified, supra, that his conduct in looking back consumed time which could have been utilized in stopping his car and thus have avoided a sudden stop. He also testified that this sudden stop deprived the car behind him, the Lovell car, of stopping time and, at the rate the traffic was moving, about 50 or 60 feet of stopping space.

This evidence is binding on Mr. Marcus and clearly shows that his negligence and the negligence of Mr. Lovell concurred and contributed to the accident and the resultant injuries. The negligence of both was the proximate cause of the accident.

Mr. Marcus has points complaining of the refusal of the Trial Court to submit several requested special issues. No motion for new trial was filed by Mr. Marcus and these matters were not mentioned in his motion for judgment. They are not properly before us. Rule 324, Texas Rules of Civil Procedure, Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887.

The judgment of the Trial Court is affirmed.

Affirmed.

On Motion for Rehearing.

Mr. Lovell complains that we "overlooked" four denials in his testimony that his car by hitting the Marcus car propelled it into appellees' car found on pages 172, 173, 176, 177, 187 and 188 of the statement of facts.

There is no such denial on page 172. The denial on page 173 is copied in our opinion. On pages 176 and 177 Mr. Lovell stated that his previous testimony was correctly understood and that he reached the "conclusion that the Chrysler automobile did not strike the automobile being driven by Mrs. Stanford after" his car struck the Marcus car because "I had a ring side seat to that show."

There is no denial on page 187.

The denial on page 188 is quoted in the opinion.

The motions of both appellants for rehearing are overruled.

Motion overruled.